737 So.2d 14 (1999)
Lillie JACOBS
v.
CITY OF BUNKIE and/or Town of Bunkie.
No. 98-CA-2510.
Supreme Court of Louisiana.
May 18, 1999.
*15 Dannie P. Garrett, III, Paul A. Holmes, Baton Rouge, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Angie Rogers LaPlace, Baton Rouge, John Taylor Bennett, Candyce Catherine Gagnard, Marksville, Counsel for Respondent.
KIMBALL, J.[*]
Lillie Jacobs was injured on February 11, 1993, in a single-car accident within the city limits of Bunkie, Louisiana when a sink hole in the street caved in beneath the tire of the pickup truck she was driving. Mrs. Jacobs filed suit against the City under Civil Code Articles 2315 and 2317. The Twelfth Judicial District Court held the 1995 constitutional amendment to Article XII, Section 10(C), was not curative or remedial, and therefore, could not be applied retroactively to the instant case. Further, finding that La. R.S. 9:2800 stood in conflict with Article XII, Section 10(A) prior to the amendment, the trial court declared the statute unconstitutional and awarded damages to the plaintiff. We affirm.

I.
On February 11, 1993, Lillie Jacobs was driving a pickup truck down Holly Street in Bunkie, Louisiana. As she proceeded through the intersection of Holly and Vine Streets, a sink hole caved in under the right front tire of the truck she was driving. As a result of the impact, Mrs. Jacobs sustained an injury to her wrist. Mrs. Jacobs filed suit against the City of Bunkie on February 22, 1994.[1] *16 She alleged that the City was liable for her injuries under the theories of strict liability and negligence.[2] The City answered and plead as an affirmative defense the "limitations of liability for public bodies" under La. R.S. 9:2800. Plaintiff then amended her petition to assert the unconstitutionality of the notice provision La. R.S. 9:2800.[3]
Louisiana R.S. 9:2800 "Limitation of liability for public bodies," provides in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

C. Constructive notice shall mean the existence of facts which infer actual knowledge.

* * *
The first trial in this case was held September 28, 1995, in which the trial judge, Harold J. Brouillette, specifically found that "the City of Bunkie had no notice of this defect," as would be required for plaintiff to recover under La. R.S. 9:2800. However, the judge observed that the first circuit in Rhodes v. State Through Dept. of Transp. and Development, 941758 (La.App. 1 Cir. 5/5/95), 656 So.2d 650, had recently declared La. R.S. 9:2800 unconstitutional as a violation of the abrogation of sovereign immunity contained in Article XII, § 10(A) of the Louisiana Constitution. Additionally, he noted that this Court in Chamberlain v. State Through Dept. of Transp. and Development, 624 So.2d 874 (La.1993), found La. R.S. 13:5106(B)(1), limiting damage awards against the state to $500,000.00, unconstitutional as a violation of that same constitutional provision. At the time of the Rhodes decision, and this Court's issuance of the Chamberlain opinion, Article XII, § 10 provided:
(A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.
(B) Waiver in Other Suits. The legislature may authorize other suits against *17 the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.
(C) Procedure; Judgments. The legislature shall provide a procedure for suits against the state, a state agency, or a political subdivision. It shall provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which judgment is rendered.
Based upon the pronouncements in Rhodes and Chamberlain, the trial court found La. R.S. 9:2800 to be "an unconstitutional violation of Article XII, paragraph 10(A) of the Louisiana Constitution, in that it is a partial sovereign immunity application." Holding "9:2800 is unconstitutional as it relates to this case," the trial court did not allow the City a defense under the statute. Therefore, because the plaintiff established the traditional elements of strict liability under Article 2317, that the street was in the custody of the City, presented an unreasonable risk of harm, and caused plaintiff's injury, the court awarded damages against the City totaling $12,433.42.
The City appealed the judgment to the third circuit, and on May 29, 1996, the appellate court dismissed the City's appeal and remanded the case to the district court due to a "procedural flaw;" the plaintiff failed to notify the Attorney General of her attack on the constitutionality of the statute pursuant to La.Code of Civ. Proc. art. 1880.[4]
While the case was on appeal to the third circuit, the legislature passed Acts 1995, No. 1328 which proposed a constitutional amendment to Article XII, § 10(C) allowing the legislature to limit the liability of the state. Moreover, the legislature also passed Acts 1995, No. 828 in which La. R.S. 9:2800 was reenacted in the same form originally enacted in 1985. The newly reenacted statute was to become effective upon the adoption of the constitutional amendment and share its effective date. The proposed constitutional amendment was submitted to the people of the state in the general election on October 21, 1995. The people approved the measure and it became part of the constitution effective November 23, 1995.
On January 29, 1997, after notifying the Attorney General's Office, the hearing on remand from the third circuit was held before Judge Ted R. Broyles, ad hoc, concerning the constitutionality of La. R.S. 9:2800. The City filed a motion for involuntary dismissal in which it argued that while the case was on appeal, the constitution was amended, and that this amendment cured any constitutional infirmity in La. R.S. 9:2800. In support of this proposition, the City cited a footnote found in this Court's case of Matherne v. Gray Ins.Co., 95-0975 (La.10/16/95), 661 So.2d 432, n. 10, in which this Court speculated that the issue of the constitutionality of La. R.S. 9:2800 "may never reach this Court in a posture requiring resolution" as the proposed amendment to the constitution was intended to put to rest the constitutional authority of the legislature to prescribe limits on the state's liability. The City *18 argued that the implications from this statement together with the second circuit decision in Ayers v. Brazell, 27756 (La. App. 2 Cir. 12/6/95), 665 So.2d 694, writ denied, 96-0086 (La.3/29/96), 670 So.2d 1236, holding the new constitutional amendment to be "curative," therefore allowing for retroactive application to cases still in the court system, foreclosed any argument against the constitutional application of the terms of La. R.S. 9:2800 to the case on remand. Since La. R.S. 9:2800 was rendered constitutional by the amendment and could be applied retroactively, the City argued, they could not be liable to plaintiff as Judge Brouillette had made the specific finding that the City had no notice of the defective condition. However, Judge Broyles rejected the City's arguments and dismissed the City's motion.
Judge Broyles held that the 1995 constitutional amendment was not curative or remedial, and therefore, could not be applied retroactively to the instant case. Adopting the earlier reasoning and conclusions of Judge Brouillette as his own, Judge Broyles declared La. R.S. 9:2800 unconstitutional and affirmed the damage award against the City. From this judgment the City has appealed directly to this Court pursuant to LA. CONST. art. 5 § 5(D).[5]

II.
Initially, we must determine whether Judge Broyles was correct in his ruling that the amendment to Article XII, § 10(C) is not curative or remedial and cannot be applied retroactively to plaintiffs case. In order to determine whether the constitutional provision may apply to the instant case, we must initially resolve whether Section C, as amended, is a self-executing provision. Substantively, amended Article XII, Section 10(C) provides that the legislature "may" by law "limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages." LA. CONST. art. XII, § 10(C).
The characterization of a constitutional provision as `self-executing' or not, is generally only a conclusion as to whether the constitutional intent is to provide a presently effective rule, by means of which the right given may be enjoyed and protected and the duties imposed may be enforced without supplementary legislation. 1 Cooley's Constitutional Limitations, pp. 165-172 (8th Ed., 1927; Carrington, ed.); 16 C.J.S. `Constitutional Law' ss 48-60; 16 Am.Jur.2d, `Constitutional Law', Sections 93-100.
Student Government Ass'n of Louisiana State University and Agr. and Mechanical College, Main Campus, Baton Rouge v. Board of Sup'rs of Louisiana State University and Agr. and Mechanical College, 264 So.2d 916, 919, 262 La. 849 (1972).
In Chamberlain, we applied this principle by examining the old Article XII, Section 10, parsing each subsection. Chamberlain, 624 So.2d at 881. In that case, we determined that Section 10(A) was self-executing as it was a mandatory prohibition against sovereign immunity in contract and tort, establishing a rule effective without an act of the legislature. Id. By contrast, we found that the language and functions of Sections (B) and (C), which allocate power to the legislature, demonstrated that the latter sections are not self-executing, and thus, require the legislature to provide supplemental legislation in order for the rule to be effective. Id.
Section 10(A) sets forth the "fundamental premise" that "[n]either the state, a state agency, nor a political subdivision *19 shall be immune from suit and liability in contract or for injury to person or property." As Section 10(A) sets forth a mandatory prohibition against sovereign immunity in tort and contract suits, it is a self-executing constitutional provision. Section 10(A)'s self-executing nature is evidenced further by the marked difference in function and wording from nonself-executing provisions such as Sections 10(B) and 10(C), which both allocate powers to the legislature, the former to consent to suit in matters other than contract and tort, and the latter to establish procedures for such suits and to provide the method for enforcing such judgments.
Chamberlain, 624 So.2d at 881 (internal citations omitted).
Thus, constitutional provisions that are not self-executing allocate power to the legislature requiring the legislature to enact supplemental legislation to carry the rule into effect. The new amendment to Section 10(C) uses the permissive language "the legislature by law may limit ... the... liability of the state." The use of this language and the function of the provision indicates that it does not establish a presently effective rule; rather, the provision empowers the legislature to enact a rule limiting the state's liability. Because the provision does not establish a presently effective limit on the state's liability but allocates the power to enact one "by law" to the legislature, we find the provision not self-executing. As Section 10(C) is nonself-executing, it requires supplemental legislation to carry its edict into effect.
The legislature provided this supplemental legislation in Acts 1995, No. 828, which amended and reenacted several statutes providing for limitations on the state's liability.[6] It was in this Act that the legislature reenacted La. R.S. 9:2800 without change. As we have already established, the provision limits the circumstances under which the state may be held liable for damage-causing things in their custody to those instances wherein the state had actual or constructive knowledge of the defect. Thus, the newly reenacted statute carries into effect the new provisions of Article XII, Section 10(C) by allowing the legislature to limit by law the circumstances in which the state will be liable. Thus, we find that La. R.S. 9:2800's limit upon the state's liability is within the legislature's new power "to provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability." Therefore, the statute provides a permissible limitation on the state's liability under the amended Article XII, § 10(C).

III.
Together, Article XII, Section 10(C) and La. R.S. 9:2800 became effective November 23, 1995. On that date, the plaintiff's case was on appeal to the third circuit which remanded the case on May 29, 1996. The trial on remand was held January 29, 1997. Thus, we must now examine whether the new law may be applied to the instant case which had not come to final judgment on the effective date of the new law.
As a general rule, a court must apply the law existing at the time of its decision.
[A]n appellate court is bound to adjudge a case before it in accordance with the law existing at the time of its decision. Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment which was correct under the law in effect at the time it was rendered. *20 Segura v. Frank, 93-1271, p. 15-16 (La.1/14/94), 630 So.2d 714, 725 (internal citations omitted).
Thus, if, as in this instance, a case is on appeal when the law is changed, the appellate court should apply the law as it exists at the time of its decision, unless retroactive application of the law is impermissible. We must determine therefore whether the new law at issue in this case is capable of retroactive application.
Generally, new laws which are procedural or interpretive may apply retroactively to a cause of action which arose prior to the law's effective date; however, laws which are substantive in nature may only apply prospectively "[i]n the absence of contrary legislative expression." La. Civ.Code art. 6; Aucoin v. State Through Dept. of Transp. and Development, 97-1938, 97-1967, p. 9 (La.4/24/98), 712 So.2d 62, 67. Hence, in order to determine whether the new law will be applied retroactively, we must engage in a two-part inquiry.
Initially, we seek to determine whether the legislature expressed an intent that the new law apply retroactively. Sudwischer v. Estate of Hoffpauir, 97-0785, p. 8 (La.12/12/97) 705 So.2d 724, 728. In the instant case, no language in Act 828 indicates the legislature purported to make the legislation retroactive. The Act only speaks to the effective date, stating that the Act "shall take effect ... if and when the proposed amendment of Article XII, Section 10 ... is adopted ... and becomes effective." 1995 La. Acts No. 828, Section 5.[7] In St. Paul Fire & Marine Ins. Co. v. Smith, we found the "mere inclusion of this type of [delayed effective date] provision in a legislative enactment evidences a clear legislative intent that the enactment be given prospective application" only. 609 So.2d 809, 817, (La.1992)(and authority cited therein).
As the legislature did not express its intent concerning the retroactive or prospective application of La. R.S. 9:2800, we must classify the law as either substantive, procedural or interpretive. Sudwischer, 97-0785, p. 9, 705 So.2d at 728.
Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. Interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws.
Sudwischer, 97-0785, p. 9, 705 So.2d at 728 (internal citations omitted)(internal quotations omitted).
In considering the above definitions, we find that La. R.S. 9:2800 alters the government's duty under Civil Code article 2317, and it is substantive. This conclusion is supported by an earlier decision of this Court in which we considered the nature of the same statute after it was initially enacted in 1985. In Landry v. State, Bd. of Levee Comm'rs of the Orleans Levee Dist., 495 So.2d 1284 (La.1986), this Court found that the prior version of La. R.S. 9:2800 was substantive and could not be applied retroactively.
As we noted in our previous opinion in this case, the Legislature has recently acted to limit the liability of the State and its political subdivisions for things which they own. Act 454 of 1985 (R.S. 9:2800) greatly limits the liability of the State and its political subdivisions as regards liability under La. Civil Code art. 2317. Since the statute changes the substantive law of Louisiana it applies *21 prospectively. This case arose before the statute became effective, therefore the law is not relevant to our consideration.
Landry v. Bd. of Levee Comm'rs of the Orleans Levee Dist., 495 So.2d at 1290 (citing Landry v. Bd. of Levee Comm'rs of the Orleans Levee Dist., 477 So.2d 672, 675 (La.1985) ("We note that the Legislature has addressed the matter of state liability in connection with things within its care and custody during the past legislative session by enacting 1985 Acts No. 454. Since that statute changes the substantive law it is prospective only, and thus in its application not relevant to the case under consideration. Act 454 of 1985 greatly limits the liability of the State and its political subdivisions as regards liability under La. Civil Code art. 2317.")).
The "new" La. R.S. 9:2800 is identical to the former statute as the legislature simply reenacted the identical provision without change. Thus, we find, as we did in Landry, that the statute creates a substantive change in the law. As the new law is substantive, it may only be applied prospectively to causes of action, which arise after the effective date shared with the constitutional amendment, November 23, 1995.[8] Because plaintiff's cause of action arose prior to November 23, 1995, and the new law cannot be applied retroactively, we agree with Judge Broyles' decision that the constitutional amendment cannot be retroactively applied to the instant case. Therefore, because retroactive application of the new law is not permissible, the new law as changed during the pendency of this case cannot be applied.

IV.
Having found that the constitutional amendment and the reenacted statute cannot be applied to the instant case, we must now consider whether La. R.S. 9:2800 was unconstitutional under old Article XII, § 10, a determination upon which both trial judges based the City's liability.
Judge Brouillette supported the determination that La. R.S. 9:2800 was unconstitutional in part, upon the reasoning of the first circuit, which declared the statute unconstitutional in Rhodes v. State Through Dept. of Transp. and Development, 94-1758 (La.App. 1 Cir. 5/5/95), 656 So.2d 650. This Court, however, vacated the Rhodes decision holding that the constitutional issue was reached prematurely. In that case the trial court found DOTD negligent in its maintenance and care of the malfunctioning traffic signal which caused plaintiff's injuries; however, the trial court held that the plaintiffs did not meet the La. R.S. 9:2800 burden of showing "actual or constructive notice" of the defect. Rhodes v. State Through Dept. of Transp. and Development, 95-1848, p. 4 (La.5/21/96), 674 So.2d 239, 241. On appeal, the intermediate court declared La. R.S. 9:2800 unconstitutional and applied strict liability principles to the case in a de novo review, awarding damages against DOTD.[9] Upon appeal to this Court, we pointed out that the trial court had found the State "negligent," and that a finding of negligence includes the finding that DOTD knew or should have known of the defect in the traffic light; however, the appellate court failed to recognize the inconsistency in the trial court judgment. Because the appellate court could have properly disposed of the case by determining whether the plaintiff had proven DOTD's negligence, it was unnecessary to reach the *22 issue of the constitutionality of La. R.S. 9:2800. We concluded that the determination of the constitutional issue was not essential to the proper resolution of the case, vacated the judgment, and remanded.
However, in Chamberlain v. State Through Dept. of Transp. and Development, 624 So.2d 874 (La.1993), as Judge Brouillette noted, we did hold La. R.S. 13:5106(B)(1), which limited damage awards against the State to $500,000.00, unconstitutional as a violation of Article XII, § 10(A)'s abrogation of sovereign immunity. In that case, we found that Section 10(A) is a self-executing provision that sets forth "a mandatory prohibition against sovereign immunity in tort and contract suits." Chamberlain, 624 So.2d at 881. Further, we explained that Section 10(A)'s self-executing nature affirmatively reserved to the people the right to sue the state, which concomitantly limited the legislature's power to modify that constitutional right. Id. at 882. Thus, "the legislature cannot enact substantive requirements that would curtail, abridge, impair or burden" the constitutional right to sue the State in tort. Id. Because La. R.S. 13:5106 placed a ceiling on recoverable non-economic damages, it declared that an injury inflicted by a governmental tortfeasor is not legally cognizable beyond the ceiling amount, and therefore, could not be construed as anything other than a partial resurrection of sovereign immunity. Id. Accordingly, we concluded that the statute stood in conflict with Section 10(A), and was for that reason, unconstitutional.
The Chamberlain reasoning is consistent with this Court's earlier rulings on sovereign immunity under the 1974 Louisiana Constitution, prior to the 1995 amendment. In 1978, this Court held La. R.S. 13:4521, which granted an exemption to the State from ordinary court costs, unconstitutional because the statute relieved the State of part of its liability in the suit on a contract in direct conflict with Article XII, § 10, declaring that the State has no immunity from suit or liability in contract. Segura v. Louisiana Architects Selection Board, 362 So.2d 498 (La.1978).
A few years later, in Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980), and prior to the initial enactment of La. R.S. 9:2800, we held that strict liability for damagecausing things under Article 2317 as interpreted by Loescher v. Parr, 324 So.2d 441 (La.1975), applied to a municipality, and rejected the earlier rule from Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975), that a municipality's duty to correct a dangerous condition was dependent upon its actual or constructive notice of the existence of that condition. Jones, 388 So.2d at 739. In arriving at this conclusion, the Jones Court found the waiver of sovereign immunity in Article XII, § 10 mandated that the courts not create an exception from strict liability for government defendants. Jones, 388 So.2d at 740. The Court proclaimed, "[i]t is not the function of the courts to create an exception to this unequivocal constitutional rejection of the doctrine of sovereign immunity." Id.

V.
As we noted in Chamberlain, and in accord with our reasoning in Jones, and Segura, "the legislature is as powerless as the courts to engraft exceptions onto the `unequivocal' constitutional mandate. Accordingly, Section 10(A)'s unequivocal, self-executing waiver of sovereign immunity as to suit and liability in contract and tort cases constrains the legislature and the courts from imposing limitations on this constitutional right to sue the state." Chamberlain, 624 So.2d at 884.
Thus, the legislature can no more amend the constitution by statute than could the court in Jones. Because La. R.S. 9:2800 requires the plaintiff to prove that the government defendant had "actual or constructive knowledge of the defect" in a strict liability action for a damage-causing thing under Civil Code article 2317, the 1985 legislature attempted to engraft "substantive *23 requirements that would curtail, abridge, impair or burden" onto the constitutional right to sue the State in tort with this statute. Therefore, La. R.S. 9:2800, prior to Acts 1995, 1328 and 828, was an impermissible legislative act limiting the state's liability in direct conflict with Article XII, Section 10(A)'s unequivocal waiver of sovereign immunity.
Accordingly, both Judge Brouillette and Broyles were correct in declaring the statue unconstitutional under the pre-amendment constitution. We find that La. R.S. 9:2800 was unconstitutional until Acts 1995, No. 1328 and 828 became effective on November 23, 1995. Further, the law cannot be applied to pending cases asserting causes of action which arose prior to its effective date as the law is substantive and cannot be applied retroactively. For the foregoing reasons we affirm the trial court judgment in favor of Mrs. Lillie Jacobs against the City of Bunkie.
NOTES
[*] KNOLL, J. recused, not on panel. See Rule IV, Part 2, Section 3.
[1] The City filed an exception of prescription, which the court overruled finding that the City acknowledged the obligation thereby interrupting the one year prescriptive period by making payments to Mrs. Jacobs for medical bills as well as property damage to the truck she was driving.
[2] Since 1980, a tort action against a government entity as the owner or custodian of a defective "thing" could be based upon two distinct theories of liability, negligence under Civil Code Article 2315 or strict liability under Civil Code Article 2317. Jones v. City of Baton Rouge-East Baton Rouge Parish, 388 So.2d 737 (La.1980). In the negligence action under Civil Code Article 2315 against the owner of a damage-causing thing the claimant must prove that 1) something about the thing created an unreasonable risk of injury; 2) which resulted in the damage; 3) the owner knew or should have known of that risk; and, 4) the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982). By contrast, in a strict liability action under Article 2317 against the owner of a damage-causing thing, the claimant must prove only three of the four elements of negligence, as he is relieved of proving that the owner "knew or should have known" of the risk involved. Id.
[3] This statute would effectively eliminate the distinction between the traditional strict liability action under Civil Code Article 2317 and the negligence action under Article 2315 against a government owner of a damagecausing thing, as the provision adds to the "strict liability" cause of action the requirement that a claimant prove "actual or constructive knowledge."
[4] Art. 1880. Parties

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In a proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard. If the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.
La.Code Civ. Proc. Art. 1880 (emphasis added).
[5] LA. CONST. Art. 5 § 5(D) provides the right of direct appeal to this Court when a statute had been declared unconstitutional.

Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional....
[6] Acts 1995, No. 828 amended and reenacted La. R.S. 13:5106; and reenacted La. R.S. 9:2798.1, La. R.S. 9:2800, La. R.S. 13:5112 and 5114, La. R.S. 29:23.1, and La. R.S. 42:1441.1 through 1441.4. relative to limits of public liability.
[7] But See Section 3 of Acts 1997, No. 315, § 1 of which amended LSA R.S. 23:1031, Employee's right of action; joint employers, extent of liability; borrowed employees.

The provisions of this Act shall be applied prospectively only and shall not apply to any cause of action arising prior to the effective date of this Act.
[8] In so far as Ayers v. Brazell, 27756 (La.App. 2 Cir. 12/6/95), 665 So.2d 694 is inconsistent with this opinion, it is hereby overruled.
[9] The court of appeal found an abuse of discretion in the trial court's denial of plaintiff's motion for a new trial and since the record was complete reviewed the case de novo. Rhodes v. State Through Dept. of Transp. and Development, 94-1758, 656 So.2d 650. Finding that La.R.S. 9:2800 conflicted with Article XII, Section 10(A) the appellate court applied the principles of strict liability. Id. The court then awarded damages against DOTD because the malfunctioning traffic light which caused plaintiff's injuries created an unreasonable risk of harm Id.