J¿KUHN, J.
This appeal involves a two-vehicle accident that occurred on a state highway when one of the vehicles veered from its lane of travel into the opposing lane. The issue presented is whether a depression in the highway measuring about 4 feet long, 18 inches wide and 2 inches deep caused the accident. The trial court concluded it did. Since we find the evidence does not establish that the depression was a cause of the accident, we reverse.
FACTUAL BACKGROUND
On October 18, 1990, Keri Mayfield worked a full day, went hunting that evening after work, and then met friends at a bar in Mandeville, Louisiana, where he stayed until around 3:30 or 4:00 a.m. the next morning. His father, William May-field, stopped at the bar around 3:00 a.m. and offered to buy him a drink. According to William, Keri refused the offer, explained he was not feeling well and stated he had been sipping on a beer he held in his hands for nearly an hour. Keri left the bar driving his Toyota Célica. He traveled north on Louisiana Hwy. 437 in St. Tammany Parish, Louisiana, towards his home. Before he reached his destination, the acci *521 dent happened. Due to his injuries, Keri has no memory of the accident or events leading to it.
Charles Hurston left his house in the early morning of October 19th, after a full night of sleep. He was driving a Peterbilt eighteen-wheel tractor-trailer, and was headed south on Hwy. 437 with a full load of gravel. He described Hwy 437 as a two-lane rural blacktop highway. He explained that the accident occurred on a straight portion of the highway that was posted with a 55 miles per hour speed limit. He stated he was traveling about 45 to 50 miles per hour and had seen the lights of the Mayfield vehicle when it was about 2 to 2-1/2 miles south of him.
According to Hurston, he did not cross the center line of the highway and was in his lane of travel when the accident happened. He explained that during his 15 years of driving ptrucks, he developed the habit of using the hood ornament on the center of the hood of the tractor-trailer to judge his position on the roadway; he lined up the ornament with the edge of the ditch to make sure he was in his lane of travel. He recalled using this method to ensure he was as close to the right edge of the road as possible because the highway was narrow. He explained he did not go off to the right side of the highway because there was a ditch on that side. Although he did not see the Mayfield car hit his vehicle, he felt the impact. Since the tractor-trailer’s steering box was damaged upon impact, Hurston was unable to steer. The tractor-trailer traveled about 500 feet further south, crossing the northbound lane and stopping in a ditch on the east side of the northbound lane. The Mayfield car ended up overturned in the same ditch.
Hurston gave a statement to Sergeant Richard Cooke, the investigating officer who arrived at the accident scene about 20 minutes later. Cooke concluded the accident was caused by the Mayfield vehicle crossing the center line. He based his conclusion on Hurston’s statement, a fluid trail that started in the southbound lane and tapered off into the ditch, and the final resting spot of the Mayfield vehicle. Keri Mayfield, who was seriously injured and had to be extricated from his vehicle, was unable to give a statement to Cooke. Cooke saw beer cans in the Mayfield vehicle and detected the odor of alcohol on and about Mayfield as he was being removed from the vehicle. A blood sample drawn about 2 hours after the accident revealed that Keri’s blood alcohol concentration was .1 percent. His blood alcohol concentration was conservatively estimated to be about .09 percent at the time of the accident after adjustments were made for time delays, blood loss and intravenous fluid administration.
PROCEDURAL BACKGROUND
Plaintiffs, Keri Mayfield and his parents, William and Pamela Mayfield, filed suit against the State of Louisiana through the Department of Transportation and Development |4(DOTD). Plaintiffs claim that Hurston steered or allowed his tractor-trailer to veer to the left of a depression in the highway to avoid traveling across it. Plaintiffs assert the depression was an unreasonably dangerous condition that caused the accident, and that DOTD is liable on negligence and strict liability principles. Plaintiffs also named Hurston, Ruben Dupre, Jr., the owner of the tractor-trailer unit; and Dupre’s insurer as defendants. The defendants filed various reconventional demands and cross-claims.[2] The parties settled all of the claims except the Mayfields’ claims against DOTD, which were addressed at trial.
The trial court concluded DOTD was liable and assessed 30 percent of the fault to DOTD, implicitly concluding that the condition of the highway presented an unreasonable risk of harm that caused the accident. The trial court allocated 10 per *522 cent of the fault to Keri Mayfield and 60 percent of the fault to Hurston, who was no longer a party to the suit. The trial court signed a judgment awarding damages to plaintiffs. On appeal, DOTD argues the trial court erred in finding that it breached a duty and in finding that the depression was a cause of the accident.
ANALYSIS
Plaintiffs’ claims against DOTD are based on' negligence and strict liability theories of recovery. La. C.C. arts. 2315 and 2317. Under either theory, the plaintiff must prove: 1) the thing which caused the damage was in the custody of the defendant; 2) the thing contained a “defect” (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and 3) the “defective” condition of the thing caused the plaintiffs injuries. Oster v. Dep’t of Transp. & Dev., 582 So.2d 1285, 1288 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). The plaintiff asserting negligence liability | ¿under article 2315 has the additional burden of proving the defendant knew or should have known of the defect. Id. at 1112, n. 7.[3]
The State, through the DOTD, is not a guarantor of the safety of travelers. Rather, the DOTD has a duty to maintain its highways and shoulders in a reasonably safe condition. DOTD breaches this duty when a highway presents an unreasonably dangerous condition to motorists. Whether DOTD breaches this duty depends upon the facts and circumstances of each case. Ryland v. Liberty Lloyds Ins. Co., 93-1712, p. 16 (La.1/14/94), 630 So.2d 1289, 1300-1301.
The parties did not contest that the state had custody of Highway 437. Thus, in order to carry their burden of proof, plaintiffs had to establish that the depression presented an unreasonable risk of harm to Keri Mayfield and that the depression was a cause of the accident.
During the trial, two experts in the field of accident reconstruction testified. They each addressed the condition of the highway and offered very different accounts of how the accident happened. Joseph Andre, a former lieutenant colonel with the state police department, investigated the accident site 19 days after the accident. Andre believed Hurston crossed the center line of the highway because he was avoiding the depression, which Andre measured to be about 4 feet long, 18 inches wide and 2 inches deep. He determined the location of the vehicles at the point of impact in relation to the highway’s center line by examining the gouge and scuff marks on the surface of the road. He concluded that the left, front tire of the Mayfield vehicle was on the center line and that the tractor-trailer was within the northbound lane by a minimum of 12 inches when the vehicles |fihit. Andre calculated that the distance from the center of the depression in the southbound lane to the point of impact was 64 feet.
Defendants presented the testimony of Joseph Blaschke, an owner of an engineering consulting firm who examined the accident site about one month after the accident. He described the highway in the general area of the accident as “relatively old” with normal cracks. But he stated he found no condition that would have caused a driver to lose control of his vehicle or to even have difficulty in maintaining control. Blaschke examined the gouge, scrape marks and fluid stains on the highway and calculated the point of impact to be about 15 feet further south and further to the *523 west than where Andre proposed it was. He found the accident was caused by the Mayfield vehicle crossing the center line and that the point of impact was a couple of feet west of the center line in the southbound lane. He believed the condition of the highway played no part in causing this accident.
Several other witnesses testified regarding the condition of the highway. Hurston described Highway 437 as a bad road with a few dents in it. He testified there was a small hole, which he described as saucer-like, in the middle of the southbound lane in the general area of the accident. Hur-ston testified he encountered the depression either right before or after the accident happened. He explained it had no effect on his vehicle; it did not push it to the right or to the left.
William Mayfield testified that the highway was generally in deplorable condition and that when no cars were coming from the opposite direction, trucks typically traveled in the center of the highway. Pam Mayfield testified that everyone in the community complained about the poor condition of the highway. She described the area in question as a “dip” in the road. Cooke described it as a depressed area patched with asphalt. Photographs of the area show the depression has a gradual slope towards the center.
|70n appeal, plaintiffs contend the trial court correctly concluded that Hurston caused or permitted his tractor/trailer to cross the center line of the highway and to strike the Mayfield vehicle. Plaintiffs contend the trial court rejected Cooke’s and Blaschke’s conclusions that the impact occurred in the southbound lane, and accepted Andre’s conclusion that the impact occurred in the northbound lane. Plaintiffs urge that these conclusions are neither manifestly erroneous nor clearly wrong and should not be overturned.
For purposes of this appeal, we accept plaintiffs’ contention that the tractor-trailer crossed the center line. But still, we find the evidence is legally insufficient to prove that: 1) DOTD breached its duty to keep the highway in a reasonably safe condition, and 2) the condition of the highway caused Hurston’s vehicle to cross the center line. Thus, the trial court erred in concluding that the portion of southbound Hwy. 457 traveled by Hurston was unreasonably dangerous and that its defective condition was a cause in fact of the accident.
We acknowledge that Andre believed the condition of the highway played a role in the accident. He based this opinion on the impact location and the description Hurston gave of his actions prior to the accident. Andre assumed Hurston crossed the center line because he was trying to avoid the depression. Andre explained that trucks ride “real hard” due to their heavy suspension and drivers try to avoid rough spots in the road. He believed the reason Hurston was across the center line at the point of impact was that he was watching the emblem on his hood rather than watching the location of the Mayfield car. Andre testified that it takes time to maneuver a loaded tractor-trailer due to its length. He assumed Hurston was attempting to get back in his lane when the impact occurred and that Hurston misjudged the distance between himself and the Mayfield vehicle.
Andre acknowledged that Hurston testified he was aware of the depression and drove through it rather than driving around it. Andre also acknowledged there was no |seyewitness testimony stating that Hurston’s vehicle had swerved from his lane and that there were a number of possible reasons why Hurston’s vehicle may have strayed across the center line. He commented that Hurston could have been inattentive or could have been distracted. But Andre thought the scenario that Hurston was avoiding a problem area in the highway was more likely than the other scenarios. He acknowledged that Hurston would have had to make a con *524 scious effort to steer to avoid the depression.
Accepting all of Andre’s conclusions, there is no evidence establishing that the depression actually caused Hurston to lose control of his vehicle or caused him to veer into the northbound lane. If Hurston chose to veer from his lane to avoid the depression area, as Andre assumes, this would establish that Hurston breached the duty of reasonable care owed to himself and to Keri Mayfield to be a reasonably prudent driver and to keep his vehicle under control; it would not establish that DOTD breached the duty it owed to both the south and northbound vehicles to maintain that portion of the highway in a reasonably safe condition. Ryland v. Liberty Lloyds Ins. Co., 93-1712, pp. 19-20, 630 So.2d at 1302-1303.
Appellees correctly assert that if Hurston veered from his lane of travel to avoid a dangerous condition in the highway, the fact that Hurston did not actually strike the depression does not preclude a finding of legal or factual causation. But in this case, the evidence does not establish that the depression presented an unreasonable risk of harm to motorists traveling in the southbound lane. Not every imperfection or irregularity creates an unreasonable risk of harm. The imperfection or irregularity must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances. Dupree v. City of New Orleans, 99-3651, p. 7 (La.8/31/2000), 765 So.2d 1002, 1012-1013.
|9The evidence does not establish that the depression was a dangerous condition. Keri Mayfield testified that before the accident, he had driven through the accident site daily and had not had any trouble driving his own car through the depression in the southbound lane. Andre also testified that a loaded tractor-trailer should not have encountered any difficulty steering across the depressed area. He stated it would have caused the tractor-trailer to bounce some but would not have caused it to veer across the center line. In short, there is no testimony establishing that the southbound lane could not be traveled safely by a motorist exercising ordinary care or that it was even difficult to negotiate as a result of the depression. Assuming Hurston crossed the center line, Hurston’s actions, whether purposeful or passive, were the sole cause of the accident rather than the condition of the highway. Thus, the trial court was manifestly erroneous in concluding otherwise.
CONCLUSION
For the reasons stated, the automobile accident did not result from a highway defect which created an unreasonable risk of harm. The State of Louisiana, through the Department of Transportation and Development did not breach the duty it owed to keep the highway in a reasonably safe condition. Thus, the trial court’s judgment is reversed. Appeal costs are assessed to plaintiffs-appellees.
REVERSED.

. Hurston testified that he had filed a separate suit against Keri Mayfield in St. Tammany Parish. At the time of trial, that matter was still pending.

. To advance a claim based on La. C.C. art. 2317, plaintiffs do not have to establish DOTD’s knowledge of the condition of the highway. Although La. R.S. 9:2800 would require a plaintiff who brings a strict liability action under Civil Code article 2317 to prove that a government defendant had actual or constructive knowledge of the vice or defect, the application of La. R.S. 9:2800 to causes of action arising prior to November 23, 1995, has been held unconstitutional. Jacobs v. City of Bunkie, 98-2510 (La.5/18/99), 737 So.2d 14, 23. Since the accident happened in 1990, La. R.S. 9:2800 is not applicable.