802 So.2d 1005 (2001)
Ruth Laverne Welch HICKS, Alvis A. Hicks, Jr., Danny Lee Hicks, David Alan Hicks, Bennie Ray Hicks and Mary Elizabeth Hicks Dortch, Plaintiffs-Appellees,
v.
STATE of Louisiana, Department of Transportation and Development, et al, Defendants-Appellants.
No. 34,890-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 2001.
*1007 C. Joseph Roberts, III, Counsel for Appellants.
Tommy J. Adkins, Ruston, Don C. Burns, Counsel for Appellees.
Before WILLIAMS, STEWART and KOSTELKA, JJ.
WILLIAMS, J.
The defendant, State of Louisiana, Department of Transportation and Development ("DOTD"), appeals a judgment in favor of plaintiffs ("The Hicks") for damages resulting from an automobile accident. For the following reasons, the trial court's judgment is affirmed, insofar as it finds liability on the part of DOTD. The judgment is amended as to quantum, and, as amended, affirmed.

FACTS AND PROCEDURAL HISTORY
On the night of September 14, 1991, Alvis A. Hicks, Sr. and his wife, Ruth Laverne Welch Hicks, were traveling on La. Hwy. 846. Mr. Hicks was driving his 1978 Thunderbird. As the couple neared the intersection of the state highway with Barr Road, Mr. Hicks ran off the roadway and side-swiped a large tree, injuring Mrs. Hicks, and seriously injuring Mr. Hicks. Mrs. Hicks' relatively minor injuries required a short hospital stay, but Mr. Hicks' spine was injured, which rendered him a quadriplegic (tetraplegic) and required his hospitalization until his death on February 21, 1992.
Mrs. Hicks and her five adult children filed this survival action and wrongful death action for the injury and death of Mr. Hicks. Mrs. Hicks also sought damages for her own injuries sustained in the accident. Mrs. Hicks died of causes unrelated to the accident during the pendency *1008 of the litigation, and the Hicks children were substituted in her stead. After a judge trial, a judgment was rendered in favor of the plaintiffs, totaling slightly in excess of $3.5 million.

STIPULATIONS
We first address those matters not directly at issue in this litigation, which were addressed by stipulation of the parties at trial. Alvis A. Hicks Sr. was born Nov. 18, 1921 and died on February 21,1992 at the age of 70, while a patient in Ochsner Foundation Hospital, Jefferson Parish, Louisiana. Ruth Welch Hicks was born on July 4, 1924 and died on July 2, 1997 in Ouachita Parish, Louisiana, at the age of 72, of causes unrelated to the accident giving rise to this litigation. Mr. and Mrs. Hicks were married from Nov. 6, 1941 until the death of Mr. Hicks in 1992. Between 1944 and 1955, five children were born of the marriage. These adult children have been substituted as parties plaintiff on the death of Mrs. Hicks.
The medical expenses of Mr. Hicks, related to his injuries, totaled $437,351.95. Mrs. Hicks' medical expenses for her injuries were $4,326.91. The roadway used by Mr. Hicks was a state highway under the "garde" of the Louisiana DOTD. The parties stipulated to the loss of $63,498 in net income to Mrs. Hicks as a result of her husband's death.

EXPERT EVIDENCE PRESENTED
An overview of the evidence adduced is necessary to an understanding of our resolution of this case. The accident occurred in the middle curve of a series of curves on La. Highway 846. At the time of the accident, this series of curves was preceded by a winding road sign, which, according to the expert witnesses at trial, is intended to indicate that a motorist should anticipate three or more curves in the roadway within close proximity to each other.
At the time of the accident, the advisory speed plate on the winding road sign prior to the curve provided for a 35 mph advisory speed. While a posted speed is the highest legal speed allowed for the roadway, the advisory speed is a suggested discretionary speed, a speed at which a driver will feel comfortable because the centrifugal forces acting on him (and his vehicle) will not be excessive. The curve can be driven at a higher speed, but greater attention to steering, braking, and road surface and conditions must be exercised.
An intersecting road, called variously "Barr Road" or "Tin Top Road," enters the roadway in the curve. This road is a dirt road, and, at the point where the roads meet, DOTD built an apron of asphalt. The purpose of this apron is to prevent material (dirt, mud or rock) picked up by traffic on the dirt road from being deposited onto the state highway. The presence of such material on the roadway would itself present a hazard to the motoring public, especially at that point of curvature in the road. Essential to that function, the apron must slope slightly away from the plane of the highway itself.
The highway is "superelevated" or, in lay terms, banked, so that the centrifugal forces operating on a car moving through the curve will serve to push the car into the roadway, instead of pushing it sideways and off the road. A problem occurs when an automobile, traveling through a curve, encounters too great a change, i.e., when the tires leave a superelevated section of roadway and encounter another surface (here, the apron) with too great a difference in superelevation. According to the expert testimony, when the change in slope between the two surfaces exceeds.07, a "rollover effect" is experienced, in which the driver is not aided in overcoming centrifugal forces by the banked angle *1009 of the roadway, and the vehicle then is acted on more strongly by those forces that tend to straighten out its path. In sum, the driver who encounters this situation will have to steer more aggressively to stay in the roadway. From the evidence, Mr. Hicks encountered this situation and failed to recover.

STANDARD OF REVIEW
A trial court's finding of fact may not be reversed absent manifest error or unless clearly wrong. Lasyone v. Kansas City Southern R.R., 2000-2628 (La.4/3/01), 786 So.2d 682, 688, citing Stobart v. State of Louisiana, Through Department of Transportation and Development, 92-1328 (La.4/12/93), 617 So.2d 880. While we have reviewed the entire record to determine the reasonableness of the trial court's findings, we here delineate those factual findings that we deem to be reasonable, and which support the trial court's finding of liability on the part of the State of Louisiana, DOTD.

Defective Condition of Highway
The trial court found that the advisory speed sign of 35 mph was excessive, based on the testimony of Dr. Richard Robertson, the expert for DOTD. The expert testified that, based on his "ball bank"[1] studies, the advisory speed should have been set at 30 mph and not at 35 mph. The trial court found that because the apron connecting Tin Top Road and La. Hwy. 846 was the same color as the highway, it gave the appearance that the road either was not curved, or made it appear to curve less than it actually did. Most importantly, the court found, and we accept as reasonable, that the apron/highway connection was built in such a way that when Mr. Hicks strayed slightly from the roadway, the rollover effect acted to force his car off the highway. The trial court found that the accumulation of gravel on the apron operated to prevent Mr. Hicks from recovering control of his vehicle after the rollover effect began. Finally, the court found that the lane in which Mr. Hicks was driving was measurably narrower than the other lane, and thus the "centerline" of the highway was misleading and not truly indicative of the width of the lane available to Mr. Hicks for safe travel.

Notice of the Defective Condition(s)
The trial court found, and we accept as reasonable, that DOTD had notice of the above-stated conditions. The court found that the testimony of former state troopers, a parish maintenance supervisor and a local resident established that the highway in question had an "accident history" sufficient to give DOTD actual or constructive notice of the problems with this portion of the highway and, thus, under an obligation to investigate and remedy its problems. Further, the presence of the gravel on the apron is readily apparent in the pictures taken on the night of the accident and in later photographs. Considering the regular maintenance inspections testified to by DOTD employees, the State should have been aware of this buildup of extraneous material on the margin of the highway and of the need for the removal of this material.
Additionally, we note that actual or constructive notice of the defect need not be shown to establish the liability of the state for a defective thing within its garde, because LSA-R.S. 9:2800 is not applicable to this 1991 accident.
*1010 The limitation of liability for public bodies is provided for in LSA-R.S. 9:2800, which provides in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
In Jacobs v. City of Bunkie, 98-2510 (La.5/18/99), 737 So.2d 14, the Louisiana Supreme Court held that LSA-R.S. 9:2800 was unconstitutional until November 23, 1995, when the legislature passed Acts 1995, No. 828. Because the accident in Jacobs occurred in 1991, the plaintiff did not have to show that the City of Bunkie actually or constructively knew about the defect and had a reasonable opportunity to remedy the defect. The defect was a sinkhole which developed in a street, into which the plaintiff drove her car and injured herself. The court held that Section 2800 was substantive, and thus not retroactively applicable to a 1991 accident. The instant accident occurred in 1991, prior to the passage of Act 828 of 1995.
Therefore, in the instant case, the plaintiffs had only to prove that: (1) the DOTD owned or had custody of the thing that caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; and (3) the defect was a cause-in-fact of the accident.

Unreasonable risk of harm
DOTD has a legal duty to maintain the highways in a reasonably safe condition. Sinitiere v. Lavergne, 391 So.2d 821, 824 (La.1980). This duty "extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition." Sinitiere, supra at 825. This duty extends not only to attentive drivers, but to those who may be momentarily inattentive. Trahan v. State, Department of Transportation & Development, 536 So.2d 1269 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La. 1989). The Louisiana Supreme Court has held that in determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362.
Here, the lack of distinction between the highway and the apron, which could easily have been remedied by the addition of a fog line, the combination of superelevation of the roadway and the excessive reverse slope of the apron, combined to act as a trap to a motorist who strayed only slightly as he passed through the curve in the highway. The risk of harm was high, and the cost to remedy such defects appears to be low. The combination of defects in the roadway found by the trial court to exist in La. Hwy. 846 presented an unreasonable risk of harm to the motoring public.

Cause in fact
The excessive difference in slope between the highway and the apron on Tin *1011 Top Road was the primary cause of the accident and constituted a trap. Correction of the other defects might have allowed motorists to drive slower, be more attentive, or have better indicators of the highway's path so as to avoid the trap. The failure to properly sign the curve, by giving motorists a lower advisory speed, appears to have contributed to the accident. According to both experts, a lower speed would have lessened the effects of centrifugal forces acting on Mr. Hicks' car. The experts agreed that Mr. Hicks was probably driving close to the advisory speed (35 mph) at the time of the accident. The similarity of appearance of the roadway and the apron contributed to the occurrence of the accident. The trial court's finding in this respect is not manifestly erroneous. The failure to delineate the right side of the roadway, as it passed the apron, and thus to aid the motorist in avoiding its edge, clearly contributed to Mr. Hicks driving over the lip of the apron and being unable to recover. The presence of gravel on the apron would have exacerbated the loss of control resulting from the rollover effect. Clearly, the trial court did not err in finding that the construction of the highway/apron, the similarity in color between them, the failure to properly post a lower advisory speed and the presence of the gravel on the apron, all created an unreasonable risk of harm to the motoring public.

Comparative negligence of Mr. Hicks
The court assigned 100% liability to DOTD and none to Mr. Hicks. Based on the evidence adduced, it appears that Mr. Hicks was driving below the posted speed for the highway, and probably driving at the advisory speed for this section of the highway. Considering the findings adverted to above, we find no manifest error in the trial court's conclusion that Mr. Hicks was not negligent. An attentive driver, encountering at a reasonable speed, an apparently straight roadway (because of the similarity of the apron and highway), which he followed until his wheels left the roadway, dropped off an excessive reverse elevation and ran over gravel, would have experienced an accident similar to Mr. Hicks. Simply stated, this accident could have happened to any driver. Unfortunately, Mr. Hicks was unable to recover, struck the tree and was severely injured. The trial judge's conclusion that the cause of the accident rested solely with DOTD is not manifestly erroneous, and is affirmed.

DAMAGES
The trial court made the following monetary awards:

Mr. Hicks:
 Pain and suffering $ 500,000.00
 Mental anguish $ 500,000.00
 Pre-impact fear $ 35,000.00
 Medical expense $ 437,351.95
 Total $1,472,351.95
Mrs. Hicks
 Wrongful death $ 500,000.00
 Loss of services $ 75,000.00
 Loss of support $ 63,488.00
 Medical expense $ 4,326.91
 Pain and suffering $ 50,000.00
 Mental anguish $ 50,000.00
 Pre-impact fear $ 35,000.00
 Total $ 777,814.91
Hicks children:
 Wrongful death $ 250,000 per child
 Total $1,250,000.00

Our review of the record in its entirety shows a loving, attentive and very close family. All five adult children of the decedent maintained regular contact with their parents, with two of the children having daily contact.
General damages are not susceptible to exact measurement, and much discretion is left to the trial court to assess reasonable damages. LSA-C.C. art.1999. Before the court of appeal can disturb an *1012 award of general damages, the record must clearly reveal an abuse of that discretion. American Motorist Ins. Co. v. American Rent-All, 579 So.2d 429 (La. 1991); Reck v. Stevens, 373 So.2d 498 (La. 1979); Coco v. Winston Indus. Inc., 341 So.2d 332 (La.1976). The award may be amended only after such a determination is made, and then only to the extent of lowering or raising the award to the lowest or highest amount reasonably within the trial court's discretion. Coco v. Winston Indus., supra. Our finding of an abuse of discretion allows us to then consider whether prior awards for truly similar injuries are out of proportion to the instant award. Boswell v. Roy O. Martin Lumber Co., 363 So.2d 506 (La.1978).
Danny Lee Hicks was the third child of Mr. and Mrs. Hicks, born December 3, 1945 and a resident of LaPlace, Louisiana. He described his father as a loving husband, a caring father and teacher to his children, and as a careful driver. Danny Hicks indicated that his parents visited him in LaPlace on occasions and he visited them also. He indicated that his father's death caused him tremendous stress. He testified that his parents were very close and did many things together. According to Danny Hicks, before the accident, his father was a healthy, active, industrious and resourceful man, who would hunt, fish, garden, and raise beef for consumption. He testified when he visited his father during his father's stay at Ochsner, his father was in constant pain, complaining of pain in his neck and shoulders.
David Allen Hicks, the fourth child of the family, was a resident of West Monroe, Louisiana. He testified that he lived about seven miles from his parent's home. David Hicks is employed by the United States Postal Service and his route took him close to his parent's house. He testified that he usually ate lunch at his parent's home every day. He described his parents as close and loving, and his father as an industrious, hard-working man. He described his father's health before the accident as excellent. He indicated that his father suffered from a "halo" device used to stabilize his neck after the accident, and suffered further after the halo was removed. He indicated that his father had to have a tracheotomy and was unable to talk, and that he was later required to have a feeding tube inserted. David further testified that his father had difficulty breathing. He testified that family members were trained in using a suction device to clear his father's airway. He also testified that his father suffered a great deal from the effects of this aspiration process.
Mary Elizabeth Hicks Dortch is the oldest child of the Hicks family, born December 9, 1942. Mrs. Dortch's testimony showed she lived close by (within 5 to 10 minutes travel) and either visited or talked with her parents on a daily basis. She described her father as a careful and slow driver. She described her parents as inseparable. She described her father as industrious and as a good provider. She indicated that she visited him at St. Francis Hospital and at Oschner's in New Orleans, prior to his death. She was en route to New Orleans when her father passed away. Mrs. Dortch also testified that her father was in pain in the hospital and he had difficulty breathing, necessitating the use of the suction device. She indicated that her mother was devastated by the death of Mr. Hicks.
While we are not unsympathetic to the loss sustained by the Hicks children, we find the trial court award of $250,000 to each of them to be clearly excessive and an abuse of discretion. The facts of the instant case are comparable to those in Gordon v. Willis Knighton Medical Center, 27,044 (La.App.2d Cir.6/21/95), 661 So.2d *1013 991, in which this court, after reversing an adverse finding on the issue of liability, awarded damages of $125,000 to one adult child and $100,000 to two others. We reduce the damage awards to the Hicks children for the loss of their father to $125,000 each as the highest sum reasonably within the trial court's discretion, and which we can affirm.

General damages for Mr. Hicks
In Morehead v. Ford Motor Co., 29,399 (La.App.2d Cir.5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265, this court affirmed general damages of $2.732 million dollars to a slightly younger plaintiff with very similar disabling injuries. Mr. Hicks suffered spinal cord damage, rendering him quadriplegic, and requiring his hospitalization and complete care from the moment of the accident until his death. The injuries necessitated medical treatment to stabilize his neck, and subsequent treatment to improve his breathing, which eventually was inadequate to prevent his death from pulmonary problems. Mr. Hicks went from a healthy, industrious, resourceful older man, supporting his wife and enjoying his family, to a person unable to move on his own, breathe without medical intervention, eat without a feeding tube, control his bladder or bowels, or provide for even his own basic needs.
In its brief, the DOTD contends that the total general damage award is excessive and should be reduced to no more than $250,000, including any amount for pre-impact fear. However, DOTD does not specify its reasons for asserting that the court's particular award for pre-impact fear was not supported by the record. We note that the circumstances of the accident support a finding that the Hicks should have experienced significant fear of an impact during the time period between the point when the vehicle left the roadway and when it collided with the tree. There was testimony[2] that Mr. Hicks remained conscious while at the accident scene and the trial court evidently believed that both Mr. and Mrs. Hicks understood the danger of the situation they were facing.
After reviewing the record, we cannot say the trial court abused its discretion in awarding each spouse $35,000 for pre-impact fear. Considering the facts of the case and the injuries to this plaintiff, we conclude that the general damage award of $1,035,000 is well within the trial court's discretion and is not excessive or an abuse of discretion. Reid v. State Through Department of Transportation and Development, 25,778 (La.App.2d Cir.5/4/94), 637 So.2d 618. The award of medical and other expenses was, of course, subject to the stipulation of the parties and is not at issue here. The general damage award to Mr. Hicks is hereby affirmed.

Wrongful death award to Mrs. Hicks
We also conclude that the $500,000 award to Mrs. Hicks for the death of her husband is not excessive. The evidence presented, of a long, close and loving relationship between Mr. and Mrs. Hicks, supports the trial court's exercise of its great discretion in awarding this sum and it is affirmed. See Reid v. State Through Department of Transportation and Development, supra; Baughman v. State, Dept. of Transp. and Development, 28,369 (La.App. 2 Cir. 5/8/96), 674 So.2d 1063.

Loss of services award to Mrs. Hicks
The testimony showed Mr. Hicks to be a hard-working and resourceful person, *1014 who did most of his own house and property maintenance. An award for loss of future services is insusceptible of exact computation, but we find that the award of $75,000 for loss of services is not an abuse of the trial court's discretion, and it is affirmed.

General Damages award to Mrs. Hicks
Based upon the evidence in the record, we further conclude that the general damage award to Mrs. Hicks for her injuries in the accident is within the great discretion of the trial court and is affirmed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, as amended, is affirmed. All costs in this cause are assessed to the State of Louisiana, Department of Transportation and Development, to the extent allowed by law.
AMENDED AND AFFIRMED AS AMENDED.
KOSTELKA, J., dissents with written reasons.
KOSTELKA, J., dissenting
I must respectfully dissent. While the trial court may not have been manifestly erroneous in assessing appellants with 100 percent fault or in granting those damages affirmed by the majority herein, the awards for "pre-impact fear" have no support in the record and should not have been allowed. Moreover, this novel category of damage is necessarily subsumed by the very liberal general damage award.
NOTES
[1] A "ball-bank" study uses an inclinometer, a device which measures the centrifugal forces acting on a vehicle as it moves through a curved roadway. The higher the speed, the greater the bank that is required to offset centrifugal forces. Lowering the advisory speed (assuming the motorist obeys the advisory) lowers the forces which must be offset.
[2] Deposition testimony of Dr. Jose Bermudez, admitted into evidence at trial.