Dear Superintendent Picard:
You requested the opinion of this office concerning the Education Excellence Fund (the "Fund"), specifically the property disposition of funds appropriated from the Fund to an entity that dissolves prior to distribution or otherwise becomes ineligible to receive the funding.
La. Const. Art. VII, Sec. 10.8(C)(3)(i) provides as follows[1]:
 "The treasurer shall maintain within the state treasury a record of the amounts appropriated and credited for each entity through appropriations authorized in this Subparagraph and which remain in the state treasury. Notwithstanding any other provisions of this constitution to the contrary, such amounts, and investment earnings attributable to such amounts, shall remain to the credit of each recipient entity at the close of each fiscal year." (Emphasis added)
As you noted, charters to operate an independent public school are granted by the local public school systems and the Board of Elementary and Secondary Education ("BESE") to nonprofit corporations. You advised that amounts have been appropriated to certain charter schools and approved private schools where either the charter has subsequently been revoked or the charter has been voluntarily surrendered. In another case, a nonprofit corporation holding a charter was not funded by the legislature for the 2003-2004 fiscal year. In other cases, certain approved private schools that had amounts appropriated to it in the past, no longer provide educational services to children. Other private schools are still in operation but have lost their approval.
The State Constitution must be interpreted by the same rules as are other laws and, therefore, must be read to accord equal dignity to all its provisions, giving effect to the intent of both the framers and the people who adopted it, thereby avoiding absurd and impractical results. It is a general principle of judicial interpretation that, unlike the federal constitution, a state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Board ofDirectors of the Louisiana Recovery District v. All Taxpayers, et al.,529 So.2d 384 (La. 1988).
General rules of statutory interpretation include the following provisions of our Civil Code and Revised Statutes:
 C. C. art. 9: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
 C. C. art. 10: "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."
 C. C. art. 11: "The words of a law must be given their generally prevailing meaning. . ."
 C. C. art. 12: "When the words of a law are ambiguous, their meaning must be sought be examining the context in which they occur and the text of the law as a whole."
 C. C. art. 13: "Laws on the same subject matter must be interpreted in reference to each other."
 La.R.S. 1:3: "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. . ."
 La.R.S. 1:4: "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."
In Op.Atty.Gen. 03-0185 we reviewed questions similar to those poised in your request. As we noted in that prior opinion, generally funds within the state treasury are state owned funds. There are some limited exceptions, none of which we found pertinent to the Fund.
This office found that State funds which are appropriated from the State treasury remain State funds until the monies are physically withdrawn from the State treasury. This office also observed that an entity to whom an appropriation is made obtains an inchoate or incomplete interest in the appropriated monies in the state treasury. It is not until the qualifications, conditions, limitations or restrictions on the expenditure of funds are met, that the money can be withdrawn from the state treasury and expended. Ownership vests in the entity to which the appropriation was made upon the withdrawal or expenditure of the funds, not upon the effective date of the appropriation.
With the exception of the enumerated schools in Sec. 10.8(C)(3)(b), appropriations from the Fund are not made directly to the recipient school and school systems, but rather the appropriations are made to the superintendent of education. The recipient school or school systems must prepare and submit to the State Department of Education a prioritized plan for expenditure of funds it expects to receive in the coming year. Distribution of the funds may occur only after the plan has received both legislative and departmental approval as provided by law.[2]
Until the funds are distributed to the schools and school systems, which can only occur after approval of the plan by the department and the legislature, the schools and school systems only have an inchoate or incomplete interest in the appropriated monies in the state treasury. It is not until the qualifications, conditions, limitations or restrictions on the expenditure of funds are met, namely, the preparation and submission of the plan by the recipient entity and the legislative and departmental approvals, that ownership transfers.
We stated in our prior opinion that while ownership of the funds remains in the State until the money is withdrawn:
 "the monies appropriated for the schools and the school systems cannot be diverted for any other purpose nor to any other entity. The allocations to the various recipient entities must occur as described in the Constitution. Even though the schools and the school systems do not have full ownership of the funds available for appropriation from the Education Excellence Fund while those monies are in the state treasury, the disposition of the funds must follow the allocations set forth in the Constitution and the funds should be held as though in trust for the recipient entities. . ." (Emphasis added)
We believe that the foregoing is correct in the context of the previous opinion. However, we did not consider the situation where a school is no longer eligible to receive appropriations from the Fund, such as if the charter has been revoked or voluntarily surrendered or if the school no longer provides educational services to children. Under a strict, literal reading of the Constitution, monies attributable to the schools which become ineligible after the funds are appropriated but prior to their withdrawal from the State treasury would remain to the credit of such schools and earn investment income for all eternity. Under such an interpretation, those funds could never be used by anyone and the investment income could not be directed to other eligible schools and school districts. We believe that such is an absurd result which is contrary to the purpose of the Constitutional directive of using the funds to support excellence in educational practice[3].
We suggest that the only solution to this conundrum is through action of the legislature. There is no question but the problem can be corrected through a constitutional amendment. It is also possible that the legislature could resolve the problem through a statute. We recognize that the legislature cannot amend the Constitution through a statute[4]; however, the legislature may enact any legislation that the state constitution does not prohibit. In Polk v. Edwards[5], the Supreme Court held that if there is any doubt as to the constitutionality of a statute, the issue must be resolved in favor of its constitutionality unless the opponent clearly establishes that the constitutional aim was to deny the legislature the power to enact such a statute. We suggest that a possible solution would be for the legislature to define "recipient entity" to only include those institutions which have a charter or the requisite approval.
Trusting that this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
DATE RECEIVED:
DATE RELEASED: October 20, 2003
[1] La.R.S. 39:98.3.C.(9) contains an identical provision.
[2] La. Const. Art. VII, Sec. 10.8(C)(3)(g).
[3] Sec. 10.8(C)(3)(g).
[4] Jacobs v. City of Bunkie, 1998-2510 (La. 5/18/99),737 So.2d 14; Strata v. Williams, 94-1150 (La.App. 4 Cir. 11/30/94),646 So.2d 522.
[5] 626 So.2d 1128 (La. 1993).