MAX N. TOBIAS, JR., Judge.
hln this case, we address two separate partial summary judgments granted by the trial court. After examining the law and the appellate record, we affirm the judgments and remand to the trial court for further proceedings.
On 1 October 2003, the City of New Orleans (the “City”), through the Department of Public Works, issued a request for proposals for the installation, operation, and maintenance of metered parking spaces. Following a pilot program to evaluate various parking management equipment, Standard Parking Corporation and Parking Solutions, L.L.C. (hereinafter collectively referred to as “Standard”) and the City entered into a contract dated 11 October 2004, for the installation, operation, and maintenance of Parkeon Stelio Pay-and-Display stations (“Parkeon stations”). Pursuant to this contract, Standard installed Parkeon stations at the locations designated by the City. Standard is also required by the contract to maintain the Parkeon stations and collect the parking fees from them.
Un early 2005, the City of New Orleans (“City”) began replacing traditional coin operated parking meters with the Parkeon stations. During this time, the named plaintiffs received citations before August 2005 as follows:
1. Stuart H. Smith (“Smith”) received citation numbers 140244775, 140855035, and 140505190 for no parking receipt and expired time, while parking in front of his property located at 516 Saint Philip Street, New Orleans, Louisiana 70116, for reasons that of no ticket in the windshield of the vehicle and expired time;
2. Rodney Stephens received citation number 140282925 for a violation similar to Smith’s while parked in front of the driveway of Smith’s property;
3. David Veazey received citation number 139972814 for a similar violation because he placed coins in the old mechanical meter instead of the new receipt-issuing system; and he also received citation numbers 139970121, 139970121, 13933073, 139319622, 140836555, and 140864150 for no parking receipt while parked in front of the driveway of Smith’s property; and,
4. Guadalupe Gomez received citation number 139972825 for no parking receipt and expired time while parked in front of the driveway of Smith’s property-
On 8 August 2005, the City passed M.C.S., Ord. No. 22035, which updated the previous parking ordinances to accommodate the changes in technology in the method of payment from the traditional coin-operated meters to the Parkeon stations.[1] The ordinance provides for retroactive application to 1 January 2005.
*528 The plaintiffs claim to have been harmed by the “illegal and unconstitutional installation and implementation of the Parkeon System.” On 22 April 2005, the plaintiffs filed a petition for injunctive relief, declaratory judgment, and writ of mandamus, alternatively, damages for actions pursuant to the Takings Clause of the Louisiana Constitution, LSA-Const. Art. I, § 4(B), seeking various forms of 13relief including, but not limited to, the following: (1) a declaratory judgment that the Parkeon stations were installed without the mandated public hearings and the review of the proper permitting and zoning departments; (2) a writ of mandamus to be issued to the New Orleans City Planning Commission along with the Vieux Carré Commission to undertake their duty to determine whether or not the Parkeon stations conform with the French Quarter and its environment; (3) a preliminary injunction enjoining any further enforcement activities arising from the Parkeon stations; and (4) invalidation and dismissal of the parking citations listed above.
On 2 May 2005, the plaintiffs filed a first supplemental and amending petition, which further detailed the claims of the plaintiffs. It is in this pleading that the plaintiffs first prayed for class certification pursuant to La. C.C.P. art. 591, et. seq., seeking to establish a class of persons residing or located in Orleans Parish who have incurred fines improperly issued by the City for improperly issued parking citations resulting from the Parkeon stations. Certification of a class had not been addressed in the court below at the time of this appeal. See La. C.C.P. art. 592.
On 26 July 2005, after seeking leave of court, the plaintiffs filed a second supplemental and amending petition. In response to exceptions filed by Standard, the plaintiffs filed an amended, restated petition for damages on 31 March 2008.
At some time after suit was filed, all of the tickets were dismissed with no fines paid by the plaintiffs.
Almost two years later, the plaintiffs filed a motion for partial summary judgment, addressing whether Ordinance 22035 could be applied retroactively. Oral argument was held on 17 June 2010; the court granted the motion.
|4The judgment and reasons for judgment were issued on 23 July 2010. The Court stated:
It is undisputed that the installation and implementation of the Parkeon Pay Stations parking system (“Parkeon System”) changed the parking meter system throughout the City of New Orleans by going from a traditional single or double metered space system to meters which were capable of controlling multiple parking spaces.
Ordinance 22035 passed in August 2005 not only ratified the use of the Parkeon System, it provided for the enforcement of citations issued pursuant to their operation as of July 14, 2005. As such, the Ordinance retroactively changed the legal consequences for metered parking as it existed before its enactment. Although legal prior to August 2005, parking at a non metered parking space became illegal if it occurred between July 14 and August 8, 2005.
The City argues Ordinance 22035 clarified existing law, and therefore, is not technically ex post facto. The Court disagrees. When legislation applies to a circumstance that arose before the law is changed, it has ex post facto effect.
This timely appeal by the City ensued.
Standard filed a motion for summary judgment on 26 October 2009, asserting that the plaintiffs could not assert a cause of action against it stemming from their *529 grievances against the City and the Par-keon stations. After allowing more time for the plaintiffs to conduct discovery, oral argument was held on 17 June 2010; the judgment granting the motion was issued on 13 July 2010. On 20 August 2010, plaintiffs filed a motion to designate the judgment as final and a petition for appeal. Both were granted.
In its reasons for judgment the court found that,
Plaintiffs have produced no evidence that Standard Parking had a duty to advise the City on drafting and/or adopting the proper ordinances. Parkeon did not train or instruct the parking enforcement officers, issue citations or determine what constitutes a violation. There is no | factual support that Standard implemented the Parkeon System which forms the basis of plaintiffs’ claims.
Both the plaintiffs and the City have appealed the respective judgments. The plaintiffs allege that the trial court erred by granting the motion for summary judgment in favor of Standard because they did not have sufficient time to conduct discovery and that genuine issues of material fact exist. We will address these assignments of error first.
I.
This lawsuit was filed on 22 April 2005. Under La. C.C.P. art. 966, a motion for summary judgment is appropriate only after “adequate discovery.” However, it is not an abuse of the trial court’s wide discretion in discovery matters to entertain a motion for summary judgment before discovery has been completed. Simoneaux v. E.I. du Pont de Nemours & Co., Inc., 483 So.2d 908 (La.1986). It is within the trial court’s discretion to render a summary judgment or require further discovery. Eason v. Finch, 32,157 (La.App. 2d Cir. 8/18/99), 738 So.2d 1205, writ denied, 99-2767 (La.12/10/99), 751 So.2d 861.
As the Court held in Simoneaux, “[t]he only requirement is that the parties be given a fair opportunity to present their claim. Unless plaintiff shows a probable injustice a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact.” 483 So.2d at 912-13; Mitchell v. Valteau, 09-1095, p. 13 (La.App. 4 Cir. 1/27/10), 30 So.3d 1108, 1116.
The plaintiffs had over four years in which to conduct discovery. The trial court even continued the first setting of the motion in October 2009 so that the plaintiffs could have additional time to perform discovery. We find that they had | sample time. The trial court neither abused its discretion nor erred. Therefore, this assignment of error is without merit.
Next, the plaintiffs argue that Standard failed to demonstrate that no genuine issues of material fact exist, thereby warranting summary judgment and dismissal from the lawsuit. While the plaintiffs have raised various issues of fact, none are “material” to imposing liability on Standard. Standard had nothing to do with the decision to replace the meters, did not contribute to the wording of the ordinance, or is liable for any of the legal ramifications of the Parkeon stations. Thus, this assignment of error is also mer-itless.
Finally, the plaintiffs argue that Standard is liable to them for conversion and/or negligence. Again, no evidence exists to support these theories. Standard operated under a contract with the City. It did not convert any of the monies collected from the Parkeon stations; these were deposited in the City’s accounts. Further, the plaintiffs have not identified *530 any duty that Standard owes to them. Without a duty, negligence cannot exist. Lemann v. Essen Lane Daiquiris, Inc., 05-1095, p. 8 (La.3/10/06), 923 So.2d 627, 633. Again, this assignment of error is without merit.
As a result, we affirm the summary judgment issued in favor of Standard Parking Corporation and Parking Solutions, L.L.C., finding that they were properly dismissed from this ease.
Jill-
We now turn to the appeal filed by the City. It contends that the trial court erred in finding that Ordinance 22035 is not retroactive despite several arguments to the contrary.
The City first draws the court’s attention to Section 1 of the ordinance, which' provides that “[t]he replacement of single/double space parking meters with mul-ti-space pay stations in areas previously designated by this council as a metered space or otherwise regulated parking space is specifically ratified retroactively to January 1, 2005.” [Emphasis supplied.] The City argues that the ordinance itself expresses the legislative intent of retroactive application; thus, the inquiry ends there.
Article 6 of the Louisiana Civil Code addresses the retroactivity of laws:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.[2]
Notwithstanding, even when a legislative body has expressed its intent to give a substantive law retroactive effect, the law (or ordinance) may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Smith v. Board of Trustees of Louisiana State Employees’ Retirement System, 02-2161, p. 7 (La.6/27/03), 851 So.2d 1100, 1105.
The City maintains that retroactive application of the ordinance does not offend due process because residents have always been on notice that they would be fined if they did not place money in the traditional coin-operated meters. | ^Because the Par-keon stations did not provide for any new violations, it also allowed citizens to be fined if they did not park to pay. The City contends that the Parkeon stations merely updated the traditional coin meter to accommodate changes in technology in the method of payment; therefore, it should be applied retroactively. The trial court disagreed.
For purposes of determining whether to give a legislative body’s enactment retrospective or prospective application, a substantive ordinance is an ordinance that impose new duties, obligations, or responsibilities upon parties, or ordinances that establish new rules, rights, and duties or change existing ones. Jacobs v. City of Bunkie, 98-2510, p. 8 (La.5/18/99), 737 So.2d 14, 20. Interpretative ordinances are those that clarify the meaning of an ordinance and are deemed to relate back to the time that the ordinance was originally enacted. Id. A procedural, remedial, or curative ordinance relates to the form of the proceeding or operation of the ordinance. King v. State ex rel. Louisiana Dept. of Public Safety and Corrections, 98-2910, p. 4 (La.App. 1 Cir. 2/18/00), 754 So.2d 1119, 1122. A procedural ordinance prescribes a method for enforcing a substantive right and relates to the form of the proceeding or the operation of the ordinance. Jacobs, 98- *531 2510, p. 8, 737 So.2d at 20. A remedial ordinance includes one that is designed to correct an existing ordinance. See Blacks Law Dictionary 1296 (7th ed.1999). A legislative body may cure by subsequent act an irregularity of nonobservance of requirements which it originally might have dispensed with, provided that vested rights have not intervened. Barnett v. State Mineral Board, 193 La. 1055, 1068, 192 So. 701, 705 (1939).
Although the ordinance specifically provides for retroactive application to 1 January 2005, the trial court stated the ordinance provided for the enforcement of | ncitations issued pursuant to their operation as of July 14, 2005; this is the date of the initial action taken by the City Council. However, because all of the citations listed in the petitions were issued prior to the filing of the 22 April 2005 lawsuit, the City was enforcing the Parkeon stations before July of that year.
The trial court found that the installation and implementation of the Parkeon stations in January 2005 changed the parking meter system throughout the City. We agree. Even the City Council recognized that they were losing money by delaying a vote on Ordinance 22035:
CLARKSON: Thank you, Mr. Impasta-to. And whether or not these meters should have gone in is not the decision today, that’s an administrative decision. Whether or not the law is unconstitutional would have to be dealt with after this, that’s the law department. This council gets the purview of making sure that the city is, within our legislative purview, is within its jurisdiction, are ensuring that we’ve done everything legislatively to ensure that with this, that our Department of Public Works can collect the necessary millions and millions of dollars that the city is out of, in order to continue the Department of Public Works’ projects.
Therefore, we find that M.C.S., Ordinance 22035 became effective on 8 August 2005 and is to be applied prospectively only. Citizens were entitled to notice that the Parkeon stations were being used to issue citations for parking violations, in lieu of the coin-operated meters. This was especially important for those areas in which both the meters and Parkeon stations were simultaneously operational.
| mFinally, the City also argues that the trial court erred by holding that the ordinance offends the prohibition against ex post facto laws. The Municipal Code clearly defines parking and stopping violations as “civil:”
Sec. 154-686. — Civil nature of parking and stopping violations.
The civil regulation of parking and stopping (hereinafter sometimes referred to as “parking”) shall be governed by this article. Any parking violation prohibited in this article shall be a civil violation only and no criminal penalty will be imposed for its commission. For purposes of this article, a parking violation is the violation of any provision of this article providing for or regulating the parking or stopping of a vehicle. Nothing contained in this article shall be construed to repeal, restrict or amend any other section of this chapter which other section shall continue to remain and remain in full force and effect as if this article had not been adopted.
Because the ordinance is civil, not criminal, it does not offend the prohibition against ex post facto laws. Sapir v. Hardy, 349 So.2d 478, 480 (La.App. 4th Cir.), writ denied, 349 So.2d 867 (La.1977).
*532 Based on the foregoing, we affirm the partial summary judgments issued by the trial court, and remand the matter for further proceedings.

AFFIRMED; REMANDED.

BONIN, J., concurs with reasons.

. The ordinance was prepared by Council-member Clarkson on 14 July 2005 and adopted by the Council on 4 August 2005. It was then delivered to Mayor Nagin and returned to the City Council on 8 August 2005.

. For our purposes, "laws” mean ordinances.