PAUL A. BONIN, Judge.
11Arthel Scheuermann, a prominent New Orleans attorney, died testate. She made a particular bequest of her ownership interest in her law practice, Scheuermann & Jones, LLC, to Mark Gonzalez. She also appointed Mr. Gonzalez to be an independent executor of her estate. Mr. Gonzalez, individually and in his capacity as executor, filed suit against the limited liability company and Lawrence Blake Jones, the company’s surviving member and manager, seeking inter alia to discover information with which to value Ms. Scheuer-mann’s interest in the company and to recover the value of her interest from the company and Mr. Jones.
Apparently as a result of pre-suit and off-of-the-record negotiations or actions, Mr. Gonzalez also demanded in his petition that two sections of the Limited Liability Company Law, specifically La. R.S. 12:1330 and 12:1333, be declared unconstitutional because, he alleged, they violate protections afforded by the Louisiana constitution. In order to obtain a judicial declaration that the specified sections of the law are constitutional, the company and Mr. Jones moved for partial summary judgment under La. C.C.P. art. 966 E. The district court 1 ¡.rendered a partial summary judgment in their favor and designated, without supporting reasons, the judgment as appealable under La. C.C.P. art. 1915 B. Mr. Gonzalez then appealed.
We, however, on our own motion issued a rule to show cause why the appeal should not be dismissed because the partial summary judgment was improperly designated as final. After affording the parties the opportunity to show cause, we find on our de novo review that the judgment was improperly designated as appealable and dismiss the appeal.
We explain our decision to dismiss the appeal in greater detail below.
I
We begin our explanation by emphasizing the dual purposes behind making a gateway decision about whether or not a particular judgment is an appealable judgment. From the perspective of parties, and especially appellants, determining that a judgment is appealable means that the party who did not prevail in the trial court has a right to demand and receive appellate review of the judgment without further delay, but if the judgment is not appealable, the losing party must either immediately seek to invoke our supervisory jurisdiction, which is discretionary on our part, or await review of the judgment until such time that there is a final and appealable judgment. See Favrot v. Favrot, 10-0986, p. 2 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1102; see also La. C.C.P. arts. 2082 and 2201. And, from the perspective of the court, a gateway determination on the appealability of a judgment aids us in avoiding unnecessary and unproductive piecemeal | ¡¡consideration of issues arising in litigation and protects against the distortion of our basic error-correcting function. See R.J. Messinger, Inc. v. Rosenblum, 04-1664, p. 13 (La.3/2/05), 894 So.2d 1113, 1122 (“Historically, we have a policy against multiple appeals and piecemeal litigation. We also ensure that our courts operate under principles of sound judicial administration to promote judicial efficiency and economy.”); see also ’Everything On Wheels Subaru, Inc. v. Subaru *978 South, Inc., 616 So.2d 1234, 1240-1241 (La.1993).
II
Here, there is no question that the judgment declaring the two specified statutes or provisions “constitutional” is a judgment rendered under the provisions of Article 966 E of the Code of Civil Procedure, which provides that “[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the whole case as to that party or parties.”
Thus, even though a partial summary judgment may be considered “final” under the provisions of Article 968 of the Code of Civil Procedure for the purposes of signing and rendition of the judgment,[1] it is not by that fact alone appealable. A partial summary judgment such as the one rendered here is expressly excluded from the enumeration of those partial summary judgments which are deemed final | ¿for the purposes of appeal under Articles 1911 B and 2083 of the Code of Civil Procedure. See La. C.C.P. art. 1915 A(3). Such a judgment “shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.” La. C.C.P. art. 1915 B(l) (emphasis added). Thus, we necessarily examine such an express determination because “[i]n the absence of such determination and designation, any such order or decision shall not constitute a final judgment for the purposes of an immediate appeal.” La. C.C.P. art. 1915 B(2) (emphasis added).
Here, the written partial summary judgment included a statement that “this Judgment is a final judgment on the particular issue of the constitutionality of La. R.S. 12:1330 and La. R.S. 12:1333 pursuant to Acts [sic] 966 and 968 of the La.Code of Civil Procedure.”[2] Before adjourning court the trial judge had authorized the designation of finality at the request of Mr. Gonzalez’s counsel without opposition from his opposing counsel.[3]
When, as here, the trial court has failed to give explicit reasons “on the record” for its determination, we will review the certified judgment de novo. R.J. Messenger, Inc. v. Rosenblum, 04-1664, p. 2 (La.3/2/05), 894 So.2d 1113, 1115. In such a circumstance, when the basis for the propriety of the certification is not apparent, we may either request a per curiam from the trial judge to assist us in|fifurther examining or, as we elected to do, issue a rule to show cause to the parties to show why the appeal should not be dismissed for failure to comply with La. C.C.P. art. 1915.[4] Id., p. 14, 894 So.2d at 1122. The parties responded by addressing the four non-exclusive factors suggested in Mes-singer to aid in evaluating the propriety of the certification: the relationship between the adjudicated and unadjudicated claims; the possibility that the need for review *979 might or might not be mooted by future developments in the trial court; the possibility that the trial court- might be obliged to consider the same issue a second time; and miscellaneous factors such as delay, economic and solvency conditions, shortening the time of trial, frivolity of competing claims, expense, and the like. Id.[5] The overriding inquiry for us, as it is for the trial court, is “whether there is no just reason for delay.” Id., p. 14, 894 So.2d at 1122-1123.
Ill
We turn now to describe the several issues which are set forth in the parties’ pleadings in the district court.
Mr. Gonzalez’s original petition basically asserted that he was the remaining executor of Ms. Scheuermann’s succession and that the only matter remaining for 1 ^administration of her estate was her membership interest in the limited liability company. He noted-that he was a special legatee of that interest and that he had been placed into possession of all other special legacies made to him as had other special legatees.
He alleged that he was unable to complete the administration of the succession because he was unable to value Ms. Scheuermann’s membership interest for the purposes of filing a descriptive list. He indicated that the valuation of her membership interest could have federal estate tax consequences. Thus, he sought an order directed to Mr. Jones as the managing member of the company to produce to the executor “any and all documents necessary to inventory the assets” of the company and for Mr. Jones “to present himself for a deposition, under oath, to determine the financial value” of Ms. Scheuermann’s interest as of the date of her death. Mr.Gonzalez also prayed that he be allowed to conduct all necessary discovery in connection with his obligation to value the interest for the purposes of the succession.
Mr. Gonzalez’s petition then continues with his claims that La. R.S. 12:1330[6] and 12:1333[7] are unconstitutional.[8] He does *980 not specify in his petition |7which provision of the federal or state constitutions are violated by-§ 1330. He does suggest, however, that § 1330 conflicts with La. C.C.P. art. 3136.[9] But, with respect to § 1333, he claims that it runs afoul of the due process protection afforded under La. Const, art. I, § 2 because it “gives” a deceased member’s ownership interest “to the executor rather than to the decedent’s heirs or legatees” or perhaps even worse “to the LLC or the surviving member of the LLC.” Mr. Gonzalez further alleges that § 1333 is contrary to unspecified provisions of Louisiana’s succession law as codified in the Louisiana Civil Code and the Louisiana Code of Civil Procedure. Finally, Mr. Gonzalez claims, without further specificity, that § 1333 is “unconstitutionally vague because it does not establish who the assignor is of the member’s financial interest.” Then, Mr. Gonzalez makes an alternative demand in the event that the court finds the challenged provisions of the Limited Liability Law constitutional. He demands a judicial assignment of the membership interest to Mr. Gonzalez.
|sMr. Gonzalez also alleges that Mr. Jones breached his fiduciary duty to the company and its members as well as converted company funds as a result of his distribution decisions. Mr. Gonzalez finally asserts a claim concerning an offset received by Mr. Jones and his wife from insurance proceeds on property owned in indivisión with the decedent for a company debt owed by Ms. Scheuermann.
Prior to any answer being filed, Mr. Gonzalez amended his petition as of right. See La. C.C.P. art. 1151. The thrust of this amendment was to allege facts about the existence of a partnership, Scheuer-mann & Jones, which may have continued to operate despite the creation of the limited liability company. If the ongoing existence of this partnership is established, Mr. Gonzalez argues that §§ 1330 and 1333 would not apply to Ms. Scheuer-mann’s partnership interest.
The company and Mr. Jones jointly filed their answer to the petitions and generally denied the allegations, although they did aver that Mr. Gonzalez, individually or in his representative capacity, would not be entitled to inspect the books and records of the company because of the provisions of La. R.S. 12:1332 A(l). The defendants also enumerated many affirmative defenses. And they filed a reconventional demand against Mr. Gonzalez. In their re-conventional demand, the company and Mr. Jones allege that Ms. Scheuermann took or received more than $1,000,000 in compensation and/or loans to which she *981 was not entitled. They seek the repayment of that sum either from her succession or from Mr. Gonzalez personally.
|3Met with an exception of vagueness filed by Mr. Gonzalez, the company and Mr. Jones amended and supplemented their reconventional demand and therein set forth in considerable detail the financial transactions underlying their claim.
Besides these pleadings and the motion for summary judgment, of course, the only other pleadings in the record before us are Mr. Gonzalez’s answer to the reconventional demand and his demand for trial by jury, an ex parte motion and order to allow the company and Mr. Jones to exceed the limit of thirty-five interrogatories permitted by La. C.C.P. art. 1457, and the motion to transfer and consolidate the foregoing claims with the succession proceeding.
IV
We turn now- to weigh the factors suggested by Messinger along with other pertinent considerations in answering the overriding inquiry which is, as it would have been for the trial court, “whether there is no just reason for delay.” Messinger, 04-1664, p. 14, 894 So.2d at 1122-1123.
The first suggested factor is the relationship between the adjudicated and unadjudicated claims. Id., p. 14, 894 So.2d at 1122. We clearly understand Mr. Gonzalez’s concern that §§ 1330 and 1333, as the parties seem to interpret them, might present an impediment or obstacle to his unlimited access to the books and records of the company, especially if this controversy were limited to a single dispute. But we cannot overlook that, under the current status of these consolidated proceedings, the second factor, the possibility that the need for review might or might not be mooted by future developments in the trial court, and the Imthird factor, the possibility that the trial court might be obliged to consider the same issue a second time, are overwhelming. Id., p. 14, 894 So.2d at 1122.
Mr. Gonzalez contends that there are other means of his obtaining access to the company’s books and records which would not be restricted by the application of §§ 1330 and 1333. Two means come readily to mind. The first is by pursuing his alternative claim, set out in his first amending and supplemental petition, that the late Ms. Scheuermann and Mr. Jones had continued to operate as a partnership and that the company was operated for the sole purpose of leasing office space. The second is by defending the company’s claim, .set out in the reconventional demand, that Ms. Scheuermann received more than her due.[10] There are also two other possibilities, both suggested by Mr. Gonzalez, which could moot the issue of the constitutionality of §§ 1330 and 1333. One, suggested in Mr. Gonzalez’s original petition, is that by a judicial assignment to him of Ms. Scheuermann’s membership interest, the provisions of §§ 1330 and 1333 would no longer apply. The other is that Ms. Scheuermann and Mr. Jones operated their company under a “verbal” operating agreement which would preclude application of the “default” provisions of the challenged sections.
Here, the filing of the motion for partial summary judgment on the constitutionality of §§ 1330 and 1333, and the ruling thereon, came before any discovery whatsoever. *982 This impels us to consider whether resolving the ^constitutionality of these provisions was essential. In Ring v. State, Dept, of Transp. and Development, the Supreme Court noted that it has “repeatedly and consistently held that courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy.” 02-1367, p. 4 (La.1/14/03), 835 So.2d 423, 427. Citing to its earlier discussion of the “ripeness doctrine,” a “tool designed to determine when judicial review [of a statute’s constitutionality] is appropriate,” in Matherne v. Gray Ins. Co., 95-0975, p. 4 (La.10/16/95), 661 So.2d 432, 434-435, the Ring court reiterated the two elements identified in Matheme “relevant in establishing the ripeness of a case.” Ring, 02-1367, p. 6, 835 So.2d at 427. Those are “(1) the hardship to the parties if a court does not decide; and (2) the fitness of the issues for decision.” Id. An “issue is more likely fit for decision” when a party would be injured by the failure to rule quickly or when the record is “well developed” such that the risk of a speculative or overbroad decision is minimized. Id. Clearly, in our case, these considerations are patently absent.
Thus it may well develop in this case that the ruling that the challenged sections are constitutional would be moot in the sense that such judgment would have been “deprived of practical significance” or “made abstract or purely academic.” Perschall v. State, 96-0322, pp. 17-18 (La.7/1/97), 697 So.2d 240, 253, citing La. Associated General Contractors, Inc. v. State, 95-2105, p. 10 (La.3/8/96), 669 So.2d 1185, 1193; American Waste & Pollution Control Co. v. St. 12Martin Parish Police Jury, 627 So.2d 158, 162 (La.1993). Ordinarily, when an issue on constitutionality is not ripe for decision, a “district court need not have, and indeed should not have” entertained a summary judgment on the issue prior to resolving the other issues. Ring, 02-1367, p. 9, 835 So.2d at 429.
The fourth Messinger factor, such miscellaneous considerations as delay, economic and solvency conditions, shortening the time of trial, frivolity of competing claims, expense, and the like, does not add or detract from the evaluation in this case.
On our de novo consideration of the foregoing factors, we find that there is just reason for delay, conclude that the trial judge improperly designated the partial summary judgment as final, and accordingly dismiss Mr. Gonzalez’s appeal because he had no right to appeal. An appeal can be dismissed at any time when “there is no right to appeal.” La. C.C.P. art. 2162. See also Ramirez v. Evonir, LLC, 14-1095, p. 2 (La.App. 4 Cir. 4/9/15), 165 So.3d 260, 262, citing to Egle v. Egle, 05-0531, p. 3 (La.App. 3 Cir. 2/8/06), 923 So.2d 780, 782 (“The appellate court may dismiss an appeal on its own motion where there is no right to appeal.”).
V
Before closing, we address two separate matters by explaining why we have not converted the appeal to an application for supervisory writs and do not vacate the partial summary judgment.
| isFirst, as we have previously explained, a partial summary judgment which requires designation under La. C.C.P. art. 1915 B(2) as a final judgment but which has not received such designation is not an appealable judgment and remains an interlocutory judgment or ruling for the purposes of revision in the trial court. See Favrot, 10-0986, p. 4, 68 So.3d at 1103; La. C.C.P. art. 1915 B(2) (“In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an *983 immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of the parties.”). See also Roger A. Stetter, Louisiana Civil Appellate Procedure, § 3:21 (2014-2015 ed.) (“Any partial judgment that does not dismiss a party and that is not expressly authorized by Article 1915 is interlocutory in character rather than final.”).
Because the proper procedural vehicle for seeking review of an interlocutory judgment is ordinarily[11] by application for supervisory review, we can- — when appropriate — convert the improper appeal to such an application.[12] See Lalla v. Calamar, N.V., 08-0952, p. 6 (La.App. 4 Cir. 2/11/09), 5 So.3d 927, 931. An important criterion we use in guiding our discretion is whether or not exercising our supervisory jurisdiction is impelled by the Herlitz factors.[13] See Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) (finding | ^confluence-of factors which “dictates” consideration of and decision on an application for supervisory writs, and implying failure to exercise discretion under circumstances is an abuse of intermediate appellate court’s discretion). And, of course, the primary consideration of Herlitz is that review and decision by. us would terminate the litigation. See Favrot v. Favrot, 10-0986, p. 6, 68 So.3d at 1104 (“We, moreover, are persuaded by the parties’ joint representation, confirmed by our own independent review of the record, that the exercise of our supervisory jurisdiction will result in a final disposition of all issues in this case.”) (italics in original, other emphasis added).
Consequently, because the partial summary judgment,--whether affirmed or reversed at this point in the litigation, would not result in termination of this litigation, in addition to our reasons for finding that there is just reason for delay in considering the merits of the judgment, we decline to convert the appeal to an application for supervisory review.
Second, we find that vacating the ruling upholding the constitutionality of the challenged sections of the Limited Liability Company Law is not required by the disposition in Ring, - in which the district court’s premature ruling of unconstitutionality declaring a statute unconstitutional required vacating the judgment and remanding the matter to the trial court. See Ring, 02-1367, p. 9, 835 So.2d at 429. The premature ruling here is practically inconsequential. The challenged statutes are presumed to be constitutional. See Brown v. State, Department of Public Safety & Corrections, 96-2204, p. 2 (La.10/15/96), 680 So.152d 1179, 1180; Attain v. Marico Partnership, 02-1796, p. 5 (La.5/23/03), 851 So.2d 974, 979. And, as we noted'already, this partial summary judgment, not being final, “may be revised [in the trial court] at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of the parties.” La. C.C.P. art. 1915 B(2). .'
CONCLUSION
We find on de novo review that the partial summary judgment was improperly designated as a final appealable judgment because it does not satisfy the requirement *984 that there be no just reason for delay. Thus Mr. Gonzalez does not have a right to appeal the judgment. On that account we dismiss his appeal. We also decline to convert the appeal to an application for supervisory review.
DECREE
The appeal of Mark Gonzalez from the partial summary judgment in favor of Scheuermann & Jones, LLC, and Lawrence Blake Jones, read on October 24, 2014, and signed on October 29, 2014, is dismissed.
APPEAL DISMISSED

. The denial of a motion for summary judgment or motion for partial summary judgment is not a final judgment. See La. C.C.P. art. 968; see also Magallanes v. Norfolk Southern Railway Co., 09-0605, p. 4 (La.App. 4 Cir. 10/14/09), 23 So.3d 985, 988.

. Mr. Gonzales argues in his response to our show cause order that the word "Acts” was not a misspelling or typographical error but rather an error of law.

. Prior to its amendment in 1999, Article 1915 B(l) provided that in addition to a designation of finality by the trial judge, a partial summary judgment could constitute a final appealable judgment if "specifically agreed to by the parties.” This alternative was deleted in the amendment. See Acts 1999, No. 1263.

. We specifically elected to issue the rule to show cause because the certifying judge has since retired from the bench.

.We have reproduced the four factors verbatim but not placed them in customary quotation marks because we have deleted the enumerations in the original and re-arranged the presentation. Also, and importantly for our purposes, Messinger drew upon federal jurisprudence which had seemingly discarded another factor which is "[t]he presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final” based upon an understanding that the United States Supreme Court had “rejected” that factor. See Messinger, 04-1664, p. 7 (La.3/2/05), 894 So.2d 1113, 1118, n. 5. But see Curtiss-Wright Corporation v. General Electric Company, 446 U.S. 1, 9, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (“counterclaims are not to be evaluated differently from other claims, ... Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought.”) (citation in ellipsis omitted). Also see our brief comment at n. 10, post.

. While the judgment at issue declares the entirety of La. R.S. 12:1330 to be constitutional, Mr. Gonzalez specifically challenges the constitutionality of La. R.S. 12:1330 A, which reads:
Unless otherwise provided in the articles of organization or an operating agreement, a membership interest shall be assignable in whole or in part. An assignment of a membership interest shall not entitle the assign-ee to become or to exercise any rights or powers of a member until such time as he is admitted in accordance with the provisions of this Chapter. An assignment shall entitle the assignee only to receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned.

. Although the underlying judgment declares all of La. R.S. 12:1333 to be constitutional, Mr. Gonzalez specifically challenges the constitutionality of La. R.S. 12:1333 A, which *980 reads: “If a member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his person or his property, the member's membership ceases and the member's executor, administrator, guardian, conservator, or other legal representative shall be treated as an assignee of such member's interest in the limited liability company.”

. Mr. Gonzales complied with La. C.C.P. art. 1880 and served the Attorney General with his petition.

. La. C.C.P. art. 3136 reads:
Whenever an inventory of succession property otherwise would be required by law, the person at whose instance the inventory would be taken may file with the Department of Revenue and in the succession proceeding, in lieu of an inventory complying with articles 3131 through 3135, a detailed, descriptive list of all succession property. This list shall be sworn to and subscribed by the person filing it, shall show the location of all items of succession property, and shall set forth the fair market value of each item thereof at the date of the death of the deceased.
The privilege of filing a descriptive list of succession property, in lieu of an inventory thereof, may be exercised without judicial authority.

. Because the issue presented by the claim of unconstitutionality is one of access to company records, we view the reconventional demand here as significant only because of its "interrelationship with the claims on which certification is sought” as it too could furnish a vehicle for access to those same records. Curtiss-Wright Corporation, 446 U.S. at 9, 100 S.Ct. 1460. See also n. 5, ante.

. "An interlocutory judgment is appealable only when expressly provided by law.” La. C.C.P. art. 2083 C.

. Mr. Gonzales’ motion for appeal was filed within the thirty days from the date of the ruling as provided by Rule 4-3, Uniform Rules — Courts of Appeal. See Delahoussaye v. Tulane University Hospital, 12-0906, p. 5 (La.App. 4 Cir. 2/20/13), 155 So.3d 560, 563.

.The.Herlitz factors consider an “arguably incorrect” trial-court ruling which does not require the resolution of a factual dispute, and-which, if reversed, would terminate the litigation. Herlitz, supra.