JUDGE SANDRA CABRINA JENKINS
I tin this certified class action, Stuart H. Smith, Rodney Stephens, David A. Veazy, Guadalupe Gamez, and Neal'Laney (collectively, .“Plaintiffs”) appeal the trial court’s Juñe 13, 2016 judgment granting in part the motion for summary judgment filed by defendant ACS State & Local Solutions, Inc. (“ACS”), and dismissing Plaintiffs’ conversion claims against ACS, with prejudice.
For the reasons that follow, we conclude that this partial summary judgment should not be certified as a final, appealable judgment, and .we. dismiss Plaintiffs’ appeal. We also decline to exercise our supervisory jurisdiction in this.matter. La. Const. art. V, § 10(A); La. Code Civ. P. art. 2201.
FACTUAL AND PROCEDURAL BACKGROUND
, This matter has a prolonged and. complex procedural history. In January 2005, the City of New Orleans (the “City”) privatized its parking meter, system and began replacing coin-operated parking meters with parking' control pay stations (“Pay Stations”) in certain areas of the City. The Pay Stations accepted credit and/or debit cards in addition .to coins, and serviced multiple parking spaces, unlike the mechanical coin-operated meters.
|2The .City entered into a contract with ACS to collect fines associated with park *476 ing citations from the Pay Stations. ACS employees processed citation fine payments through an online payment system and by mail, and operated payment centers where fines could be paid in person. The City also entered into a contract with defendants Standard Parking Corporation, Parking Solutions, L.L.C., and Standard Municipal Parking Joint Venture II (collectively, “Standard”) to install, maintain, and collect parking fees from the Pay Stations.
In April 2005, Plaintiffs filed a Petition for Injunctive Relief, Declaratory Judgment, Writ of Mandamus and Damages against the City and numerous other defendants.[1] Each of the named plaintiffs had received parking citations for not having a Pay Station parking receipt and for expired time. The lawsuit alleged that because the City’s Municipal Code had not been revised to cover the new Pay Stations, there was confusion and uncertainty as to enforcement issues. The lawsuit also alleged that the Pay Stations were installed without the requisite public hearings and review by the City’s permitting and zoning departments. In July 2005, Plaintiffs filed a Motion for Class Certification.
On August 8, 2005, the City passed M.C.S., Ord. 22035, which updated the previous parking ordinances to cover the changes in technology in the method of payment from the traditional coin-operated meters to the Pay Stations. The ordinance expressly provided for retroactive application to January 1, 2005.
lain March 2008, Plaintiffs filed an Amended Restated Petition for Damages. Plaintiffs asserted claims against the City, ACS, and Standard for conversion arising from the allegedly unauthorized collection of parking fees and fines. Plaintiffs also asserted negligence claims against these defendants for, inter alia, failing to obtain legal authority to issue citations at the Pay Stations. The City filed a Third Party Demand and Cross-Claim against ACS and other defendants seeking indemnification.
In October 2009, Standard filed a Motion for Summary Judgment, seeking dismissal of the Plaintiffs’ conversion and negligence claims. The trial court granted the motion, and this court affirmed. Smith v. City of New Orleans, 10-1464 (La. App. 4 Cir. 7/6/11), 71 So.3d 525; Smith v. City of New Orleans ex rel. Shires, 11-0974 (La. App. 4 Cir. 1/4/12), 81 So.3d 1018.
In January 2010, Plaintiffs filed a Motion for Partial Summary Judgment, arguing that the August 2008 parking ordinance could not be applied retroactively to January 1, 2005. On July 22, 2010, the trial court granted the Plaintiffs’ motion. This court affirmed the trial court’s judgment, finding that M.C.S., Ord. 22035 was to be applied prospectively only. Smith v. City of New Orleans ex rel. Shires, 10-1464 (La. App. 4 Cir. 7/6/11), 71 So.3d 525.
On February 20, 2013, ’ the trial court granted Plaintiffs’ Motion for Class Certification. This court affirmed. Smith v. City of New Orleans, 13-0802 (La. App. 4 Cir. 12/23/13), 131 So.3d 511.
In November 2015, Plaintiffs filed a Motion for Partial Summary Judgment seeking a finding of liability by the City and ACS, but reserving the issue of damages *477 for trial. In December 2015, ACS filed a Motion for Summary Judgment ^seeking dismissal of Plaintiffs’ claims for conversion and negligence. In March 2016, the City filed a Motion for Partial Summary Judgment seeking a dismissal of the claims of those named Plaintiffs who never received a citation or were cited but never paid the fines.
The trial court heard the parties’ various motions for summary judgment on May 13, 2016. On June 13, 2016, the trial court signed a judgment: (1) deferring the Plaintiffs’ Motion for Partial Summary Judgment; (2) deferring the City’s Motion for Partial Summary Judgment; (3) denying ACS’s Motion for Summary Judgment as to Plaintiffs’ negligence claims; and (4) granting ACS’s Motion for Summary Judgment as to Plaintiffs’ conversion claims.
On June 22, 2016, Plaintiffs filed a Motion for New Trial on the dismissal of Plaintiffs’ conversion claim against ACS, which the trial court denied on June 27, 2016. On August 29, 2016, Plaintiffs filed a Petition for Appeal.
JURISDICTION
“Before considering the merits in any appeal, appellate courts have the duty to determine sua sponte whether subject matter jurisdiction exists, even when the parties do not raise the issue.” Moon v. City of New Orleans, 15-1092, 15-1093, p. 5 (La. App. 4 Cir. 3/16/16), 190 So.3d 422, 425. We cannot determine the merits of an appeal unless our jurisdiction is properly invoked by a valid final judgment. Id.
Here, Plaintiffs are appealing the trial court’s judgment granting ACS’s Motion for Summary Judgment only with respect to Plaintiffs’ claims for conversion, leaving Plaintiffs’ negligence claims against ACS to be adjudicated.
Designation of a Non-Final Judgment: La. Code Civ. P. art. 1915(B)(1)
La. Code Civ. P. art. 1915(B) provides:
li;B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of. the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjur dicating all the claims and the rights and liabilities of all the parties. (Emphasis added.)
Thus, a partial summary judgment as to less than all claims against a party is not a final, appealable judgment where it is not designated as a final judgment in accordance with Article 1915(B)(1). Dupuy Storage & Forwarding, LLC v. Max Speciality Ins. Co., 16-0050, 16-0051, p. 5 (La. App. 4 Cir. 10/5/16), 203 So.3d 337, 342, writ denied, 16-1982 (La. 12/16/16), 211 So.3d 1171.
In this case, the trial court’s judgment stated as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment dismissing Plaintiffs’ claims against ACS for alleged conversion damages is hereby designated as final and appealable pursuant to Article 1915 of the Louisiana Code of Civil Procedure.
*478 In designating the judgment as final and appealable under La. Code Civ. P. art. 1915(B), however, the trial court did not state that there was “no just reason for delay,” nor did it give specific reasons on the record as to why there was no just reason for delay.
The Louisiana Supreme Court has declared that, “[i]n order to assist the appellate court in its review of designated final judgments, the trial court should give explicit reasons, either oral or written, for its determination that there is no just reason for delay.” R.J. Messinger, Inc. v. Rosenblum, 04-1664, p. 13 (La. 3/2/05), 894 So.2d 1113, 1122. If the trial court fails to do so, however, the ^appellate court cannot summarily dismiss the appeal. Id. “If no reasons are given, but some justification is apparent from the record, the appellate court should make a de novo determination of whether the certification was proper.” Id., 04-1664, pp. 13-14, 894 So.2d at 1122.[2]
This court, in conducting its de novo review, may use the following nonexclusive factors when deciding whether a partial judgment should be designated as appealable:
1) The relationship between the adjudicated and unadjudicated claims;
2) The possibility that the need for review might or might not be mooted by future developments in the trial court;
3) The possibility that the reviewing court might be obliged to consider the same issue a second time; and
4) Miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.
Id., 04-1664, p. 14, 894 So.2d at 1122 (citation omitted). The overriding inquiry, however, is “whether there is no just reason for delay.” Id., 04-1664, p. 14, 894 So.2d at 1122-23.
Addressing the relationship between the adjudicated and unadjudicated claims, we note that Plaintiffs’ claims against Standard have been dismissed through motions for summary judgment. The following claims have not been adjudicated: (1) Plaintiffs’ claims against the City of New Orleans (which are the subject of a pending motion for summary judgment that was deferred by the trial court); (2) Plaintiffs’ negligence claims against ACS; and (3) the City’s Third-Party Demand and Cross-Claim against ACS.
|7As for this first factor, we note that the claims that have been adjudicated and those that have not been adjudicated involve the same set of operative facts, which all relate to the wrongful collection of parking fees and fines. All of these interrelated facts depend on each other for common resolution, and should not be separated on appeal. Dupuy, 16-0050, p. 7, 203 So.3d at 343.
The second factor is the possibility that the need for review might or might not be mooted by future developments in the trial court. With respect to this factor, we note that La. Code Civ. P. art. 1915(B)(2) permits the trial court to revise its ruling granting in part ACS’s Motion for Summary Judgment at any time prior to a final judgment, which would thereby render moot the need for an immediate appeal of the partial judgment. Id.
The third factor is the possibility that this Court might be obliged to consider the same issue a second time. As for this *479 factor, we note that the sole issue to be addressed by this appeal is whether the trial court erred in finding that Plaintiffs were not entitled to assert a claim for conversion against ACS. On review, whether we affirm or reverse the summary judgment, any ruling by this Court would not end the litigation, but would only result in the matter being remanded to the trial court for resolution of the Plaintiffs’remaining claims at trial. Dupuy, 16-0050, p. 8, 203 So.3d at 343 (citing Robert v. Robert, 04-1127, p. 5 (La. App. 4 Cir. 6/28/06), 936 So.2d 223, 225-26). As in Dwpuy, “in the event of a remand, it is likely that this court will consider the same issue in a subsequent appeal.” Id. See also Setliff v. Slayter, 09-817, p. 3 (La. App. 3 Cir. 8/26/09), 19 So.3d 43, 45 (where trial court granted summary judgment on breach of contract claim, but did not dispose of defamation claim, “[w]e find that Appellant should await final adjudication of the remaining claim before seeking appellate review”).
IsFinally, we find that judicial resources would be wasted by appellate review of the partial summary judgment at this time, considering the probability of a later appeal after adjudication of the Plaintiffs’ remaining negligence claims against ACS, their claims against the City, and the City’s Third-Party Demand and Cross-Claim. An immediate determination of whether Plaintiffs have a cause of action against ACS for conversion of the parking fines will not significantly shorten the length of the trial, narrow the scope of evidence to be adduced at trial, or decrease the costs of litigation. Plaintiffs will still have to put on evidence of the alleged failure to obtain legal authority to issue citations at the Pay Stations when litigating Plaintiffs’ remaining claims against ACS and the City.
In sum, based on our de novo review of the record and applying the factors set forth in Messinger, we find that reversal of the judgment in this case, which granted a motion for partial summary judgment on a single claim, will not foreclose the possibility that this court will have to consider this same issue again after a trial o.n-the merits. In addition, because the trial. court could revise its.ruling on the partial summary judgment at any time prior to final judgment pursuant to La.' Code Civ. P. art. 1915(B)(2),' the need for this appeal may be rendered moot. We also find that judicial resources would be wasted by appellate review of the partial summary judgment at this time, considering the probability of a later appeal after the adjudication of the parties’- remaining claims. Thus, we conclude that there are just reasons for delay, and that the partial judgment should not be certified as a final, appealable judgment. Accordingly, we dismiss Plaintiffs’ appeal for lack of appellate jurisdiction,
jjjConversion of Appeal to Writ Application
“ ‘A court of appeal has plenary power to exercise supervisory jurisdiction over district courts and may do so at any time, according to the discretion of. the court.’ ” Dupuy, 16-0050, p. 9, 203 So.3d at 344 (quoting Favrot v. Favrot, 10-0986, p. 5 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1104). Thus, we have the discretion to consider this partial judgment under our supervisory authority. Id. ■“ ‘Because - the proper procedural vehicle for seeking review of an interlocutory judgment is ordinarily by application for supervisory review, we can—when appropriate—convert the improper appeal to such an application.’” Id. (quoting Succession of Scheuermann, 15-0041, p. 13 (La. App. 4 Cir. 5/22/15), 171 So.3d 975, 983).
An important criterion that we use in guiding our discretion is whether or not *480 exercising our supervisory jurisdiction is dictated under the factors set forth in Herlitz Constr. Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981). Id. And the primary consideration under Herlitz is whether review and decision by us would result in a final disposition of all issues in this case. Dupuy, 16-0050, pp. 9-10, 203 So.3d at 344 (citing Scheuermann, 15-0041, p. 14, 171 So.3d at 983).
After the partial summary judgment, all of the parties still remain in this litigation. Plaintiffs still have remaining claims against ACS and the City that will be adjudicated at trial. Thus, the partial summary judgment, whether affirmed or reversed at this point in the litigation, would not result in the termination of this litigation.
Furthermore, we ordinarily will not convert an improperly filed appeal to a supervisory writ application unless the motion or petition for appeal was filed within the delay permitted for applying for supervisory review. Andrew Paul Gerber Testamentary Trust v. Flettrich, 16-0065, pp. 6-7 (La. App. 4 Cir. 11/2/16), 204 So.3d 634, 639. Here, Plaintiffs’ Petition for Appeal was not filed until August 29, 2016, well beyond the 30-day period for applying for a supervisory writ. See Rule 4-3, Uniform Rules—Courts of Appeal.[3] Because the Petition for Appeal was filed outside the limited time allowed for filing a writ application, we decline to exercise our supervisory jurisdiction by converting the improperly filed appeal to a writ application.
Accordingly, we have neither appellate nor supervisory jurisdiction to review the trial court’s June 13, 2016 judgment.
CONCLUSION
Based upon our de novo review of the record, we find that allowing an immediate appeal of this partial judgment would only encourage the parties’ history of multiple appeals and piecemeal litigation, causing further delay and judicial inefficiency. Because Plaintiffs’ appeal from the partial summary judgment was improperly designated as a final, appealable judgment, Plaintiffs do not have a right to appeal the judgment. Accordingly, we dismiss the appeal. We also decline to convert the appeal to an application for supervisory review. La. Const. art. V, § 10(A); La. Code Civ. P. art. 2201.
APPEAL DISMISSED

. The other named defendants are John H. Shires, in his official capacity as the Director of the City’s Department of Public Works; the Parking Enforcement Officers for Unit 10, Beat 100; Michael Centineo, in his official capacity as the Director of the City's Department of Safety and Permits; the New Orleans City Planning Commission; Larry P. Hesdor-fer, in his official capacity as the director of the Vieux Carre Commission; Parking Solutions, L.L.C.; Standard Parking Corporation; and Standard Municipal Parking Joint Venture II.

. If the trial court provides explicit reasons for its determination, appellate courts review the certification under the abuse of discretion standard. Id.

. Because the Petition for Appeal was filed outside of the 60-day period for taking a devolutive appeal, we asked the parties to brief this jurisdictional issue. Plaintiffs argue that two executive orders issued by the governor after the massive flooding in Louisiana in August 2016 suspended the deadline. Given our disposition of this appeal on other jurisdictional grounds, we need not address this issue.